JOLENE L. NIELSEN, APPELLANT, V.
MICHIAL D. NIELSEN, APPELLEE.

296 N.W.2d 483

Filed September 5, 1980. No. 42958.

Philip T. Morgan of Morgan & Morgan for appellant.

Ralph A. Bradley of Wagoner & Wagoner for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

CLINTON, J.

The petitioner, Jolene L. Nielsen, appeals in this action for dissolution of marriage in which the only issue is the custody of Ryan, the only child of the parties, now 4 years of age. The parents were married in 1975, when Jolene was apparently 16 years of age. She was 20 at the time of trial in June 1979. The respondent was

22 at the time of the trial. The respondent, in his answer, asked that custody of Ryan be placed either in him or in his father and stepmother, Dennis and Connie Nielsen, whom we will hereafter refer to as "grandparents" or by their first names, as is required. However, at the time of trial, the respondent, whom we will hereafter refer to as "Mike," abandoned the request that he have custody and asked that custody be placed in the grandparents. At the end of the trial on June 18, 1979, the court announced: "Temporary physical custody of the minor child is placed in the paternal grandparents, Mr. and Mrs. Dennis Nielsen. Petitioner to have reasonable rights of visitation. Question of permanent custody is taken under advisement pending the Court's investigation, which will be completed within the next two weeks and by the Welfare Department."

On August 2, 1979, the court made the following finding: "[T]he Court being advised in the premises and in receipt of said home studies of Jolene L. Nielsen and Mr. and Mrs. Dennis Nielsen of Grand Island, Nebraska, finds that it is in the best interest of said minor child that his physical custody and control be placed in Mr. and Mrs. Dennis Nielsen of Grand Island, Nebraska, his grandparents, subject to reasonable visitation by both Petitioner and Respondent, and the Court shall retain the legal custody and control of said minor child," and entered an order in accordance with that finding. No order for child support was made because Dennis had indicated at trial his willingness to assume that obligation.

The only specific finding of the District Court bearing on the issue before us was that "the best interest" of the child required the custody order which it made. The court made no finding with reference to the fitness or unfitness of Jolene or Mike. It made no finding that Jolene had abandoned the child. Indeed, the record, as we will point out, is so barren of matters that are normally deemed significant in determining the matter

at issue that this may be the reason the court retained legal custody in itself and chose to maintain the status quo as far as physical custody was concerned. The "home studies" referred to in the court's order were apparently never received in evidence and are not included in the record, and, as far as we can tell, the contents were never made known to Jolene.

The parties separated on November 5, 1978. The only evidence the record contains with reference to the period from the date of marriage to the time of separation is that Jolene and Mike lived in a house purchased by Dennis and rented to them for $150 per month.

The record shows little as to occurrences covering the period from the date of separation until about February 19, 1979, when the grandparents came into possession of the child. The petition was filed on December 6, 1978. On December 13, 1978, Jolene was awarded temporary custody and, on December 22, Mike was ordered to pay child support of $30 per week. The record shows that up to the time of trial he had paid a total of $120. Exactly when these payments were made is not shown except that he did not make any payments after February 19, 1979. Following the separation, Jolene lived with her parents. She apparently was employed at a Hinky Dinky store for a time, but was unemployed for a 30-day period. At the time of trial, she had obtained employment with a construction firm and was earning take-home pay of $190 per week.

Jolene's explanation as to the circumstances under which Ryan was left by her with the grandparents on February 19, 1979, was that she was unemployed and looking for a job. She was going to Denver in connection with a possible audition as a singer and she asked the grandparents if they would take care of Ryan. They agreed. No audition took place and she was in Denver for only a short time. Thereafter, she visited Ryan on a few occasions and also took him to her parents' home a few times for a total of about 10 days. She came to the grandparents' home to get him on Easter Sunday

and the grandparents refused to let her have him because she had not called until 7:30 Easter morning and they had already made plans which involved Ryan.

Mike lived with his father and stepmother for a short time after the separation. At the time of trial, he was employed and living in Aurora and apparently had been all during the 4 months his parents had physical possession of Ryan before trial. He paid nothing to them for child support.

The record contains no information critical in any way of the grandparents. Dennis is 43 years old; Connie is 34. They own a suitable home. Dennis is regularly employed, both as an employee of a packing company and also as the operator of a trucking business which he owns. He has an adequate income. Connie does not work outside the home. They are willing and desirous of assuming custody of Ryan without financial help from either of the parties. Dennis has raised three boys, all now adults. There are no children by the present marriage which is of 9 years' duration. Connie has epilepsy, but there is no evidence as to its effect, if any, on her ability to care for Ryan.

The parties, in their briefs, join issue on the standards which are to be applied in determining whether custody is to be placed in a natural parent or with a person not the parent. Jolene emphasizes her natural right as a parent and the absence of any evidence of any unfitness on her part. She testified to her own fitness and was not contradicted. She indicated that it would be necessary for her to have $200 per month child support as that amount would be necessary to pay for child care. The record contains no specific information as to the manner in which Ryan would be cared for while Jolene works. Mike, acting apparently on behalf of his parents, emphasizes the "best interests of the child."

Neb. Rev. Stat. § 42-364 (Reissue 1978) authorizes the court, in cases of marriage dissolution or legal separation, to make "such orders in relation to any

minor children and their maintenance as shall be justified, including placing the minor children in the custody of the court or third parties, or terminating parental rights pursuant to subdivision (4) of this section if the welfare of the children so requires. Custody and visitation of minor children shall be determined on the basis of their best interests. Subsequent changes may be made by the court after hearing on such notice as prescribed by the court." The same statute prescribes some of the matters which should be taken into consideration in determining custody between competing parents. In contests between a parent and a third party, it lays down no criteria other than the "best interests" test. We must, therefore, look to our own decisions for guidelines, bearing in mind that such decisions cannot be based merely upon some abstract formulae. We now examine our decisions involving competing claims between a parent and other relatives, usually grandparents. Ordinarily, this court has not had difficulty in determining what the result should be. There has, however, been considerable conflict in the statement of the underlying principle and an examination of the cases indicates that the conflict is rather persistent.

We begin with *Raymond v. Cotner*, 175 Neb. 158, 120 N.W.2d 892 (1963). That was an action of habeas corpus, brought by the father against the maternal grandparents. In that case, the parents were divorced in 1952 when the child was about 15 months of age. The mother, after the divorce, made her home with her parents, the Cotners. The father regularly paid child support but did not visit the child because the mother objected. The evidence indicated that he was a fit and proper parent. He had remarried and had children by the second marriage. Nine years after the divorce, the mother died. The father immediately came to take his daughter to his own home. The grandparents refused to yield custody and this action was filed. The grandparents were aged 69 and 67, owned a satisfactory farm home, and were good and reputable people.

This court, in a 4 to 3 decision, determined that the father should have custody and held:

"Where the custody of a minor child is involved in a habeas corpus action the custody of the child is to be determined by the best interests of the child, with due regard for the superior rights of a fit, proper, and suitable parent.

"The courts may not properly deprive a parent of the custody of a minor child unless it is affirmatively shown that such parent is unfit to perform the duties imposed by the relationship, or has forfeited that right.

"The right of a parent to the custody of his minor child is not lightly to be set aside in favor of more distant relatives or unrelated parties, and the courts may not deprive a parent of such custody unless he is shown to be unfit or to have forfeited his superior right to such custody." (Syllabus of the court.)

*Bigley v. Tibbs*, 193 Neb. 4, 225 N.W.2d 27 (1975), was another habeas action. It involved conflicting claims of the mother and a sister of the deceased husband. In that case, the husband had custody pursuant to a decree of divorce after the mother had abandoned the family. Two years before the habeas action was filed, the father died. The father, during his last illness, placed custody with his sister. The record indicated that, for many years during the marriage, the mother had neglected the children and the family. This court held (one judge concurring in the result only) that the best interests of the child required that custody be placed in the aunt. It seems clear enough that the finding was justified both on the basis of forfeiture and of unfitness. However, the court overruled in part *Raymond v. Cotner, supra,* rather gratuitously, it seems to the writer of this opinion, since such overruling was unnecessary, saying: "To the extent that Raymond v. Cotner, *supra,* does not hold that the first and primary consideration in any case involving the custody of a child is the best interests of the child, it is overruled." *Bigley* at 8, 225 N.W.2d at 29.

In *Eravi v. Bohnert*, 201 Neb. 99, 266 N.W.2d 228 (1978), the parties were divorced in 1972 and the mother was given custody of the two children. She died in 1976. The child, who was less than 6 years of age, was sent by relatives to live with his uncle in the city of Lincoln, Nebraska. At that time, the father, who had remarried, lived in California and was working as a truckdriver. He promptly sought custody of the child and brought an action of habeas corpus. The trial court awarded custody to the uncle. We reversed and granted custody to the father. The child, a boy, was 6 years of age at the time of trial and had been in the physical custody of the uncle for only a brief period of time. Before the death of the mother, the father had, despite the distance between the homes of the parties, visited the child on more than two occasions, once for a 5-day period, sent him gifts at appropriate times of the year, and paid child support as ordered, although he at one time had been delinquent because of employment problems. This delinquency, however, had been made up before the mother's death. The father had a stable household, a good home, was regularly employed with a good income, and was of good character. The uncle litigated the matter, in part at least, because he did not know the father and was unfamiliar with his character and circumstances.

In *Eravi*, this court reiterated what had been said in *Bigley v. Tibbs, supra*, to wit, that the best interests of the child is the sole and overriding consideration in custody disputes and said that the natural right of a parent to the custody of a child is not a significant consideration in determining the child's best interest, although, "Generally speaking, it is in the best interests of the child that he should be in the care of his natural parent." *Eravi* at 106, 266 N.W.2d at 231. We also pointed out in that case that a court cannot deprive a parent of the custody of a child merely because the court believes someone else could better provide for the child or because the parent has limited financial resources.

The most recent case in this series is *Haynes v. Haynes*, 205 Neb. 35, 286 N.W.2d 108 (1979). In that case, the mother was awarded custody of the two minor female children. The mother and the children lived next door to the maternal grandmother of the children for a period of 3 years. When the mother died, the children moved in with the grandmother and lived there until the time of trial. Three months after the mother's death, the father sought custody of the children. The grandmother then also filed an application seeking legal custody of the children. At trial, the evidence showed that both parties were fit and proper persons to have custody of the children. The trial judge interviewed the children in chambers to determine their desires as to where they wanted to live. The girls, at the time of trial, were 10 and 12 years of age. The evidence showed that, although the father lived in the same city with the mother and the children, his contact with the children after the divorce was minimal and that, although he was regularly employed, he was 42 weeks delinquent in child support payments. The trial court granted custody to the grandmother. This court, in a 5 to 2 decision, affirmed the action of the trial court. In so doing, we said:

"While it is true that a parent has a natural right to the custody of his child, the court is not bound as a matter of law to restore a child to a parent under any and all circumstances. The welfare of a child of tender years is paramount to the wishes of the parent where it has formed a natural attachment for persons who have long been in the relation of parents with the parents' approval and consent. Williams v. Williams, 161 Neb. 686, 74 N. W. 2d 543." *Haynes, supra* at 39, 286 N.W.2d at 110. The dissents in the above case were based upon the failure of the majority to make appropriate findings of fact, as well as a disagreement with the statement of underlying principles.

We disapprove the statements in *Eravi v. Bohnert, supra*, and *Bigley v. Tibbs, supra*, insofar as they inti-

mate that the natural right of a parent is of no significance in determining child custody in controversies as between the natural parent and other relatives or strangers.

We hold that the guiding principles are:

Where the custody of a minor child is involved in a habeas corpus action, the custody of the child is to be determined by the best interests of the child, with due regard for the superior rights of a fit, proper, and suitable parent.

The courts may not properly deprive a parent of the custody of a minor child unless it is affirmatively shown that such parent is unfit to perform the duties imposed by the relationship, or has forfeited that right.

The right of a parent to the custody of his minor child is not lightly to be set aside in favor of more distant relatives or unrelated parties, and the courts may not deprive a parent of such custody unless he is shown to be unfit or to have forfeited his superior right to such custody.

We now turn to the facts in the case before us. The record contains no evidence that Jolene is an unfit mother. The evidence is totally insufficient to indicate that she forfeited her rights or abandoned her child by placing physical custody in the grandparents for the brief period of time here involved and under the circumstances.

We recognize that the parties to this action and their counsel have failed in their duties to present pertinent evidence pertaining to the issues, particularly with reference to fitness of the mother and the best interests of the child. We also note the failure to include the "home studies" in the record and to give the parties an opportunity to respond thereto and to subject the preparers to cross-examination. We affirm the action of the trial court insofar as it retained legal custody of the child. We remand for further hearing. We direct that the court appoint a guardian ad litem for Ryan.

Mike is directed to pay Jolene the sum of $500 for

services of her attorney in this court. Costs of the action are charged to Mike.

AFFIRMED IN PART AND REMANDED
FOR FURTHER PROCEEDINGS.

KRIVOSHA, C.J., concurring in part, and in part dissenting.

While I generally concur with the result reached by the majority in the instant case, I must dissent from that portion of the opinion which holds that a court may not properly deprive a parent of the custody of a minor child "unless it is *affirmatively shown* that such parent is unfit to perform the duties imposed by the relationship, or has forfeited that right," *ante* p. 149, __ N.W.2d __ (emphasis added), and from that portion of the opinion which recites that "the right of a parent to the custody of his minor child is not lightly to be set aside in favor of more distant relatives or unrelated parties, and the courts may not deprive a parent of such custody unless he is *shown to be unfit* or to have forfeited his superior right to such custody," *Id.* at 149, __ N.W.2d at __ (emphasis added). I do wholeheartedly concur with the majority in that portion of the opinion which recites that "[w]here the custody of a minor child is involved in a habeas corpus action, the custody of the child is to be determined by the best interests of the child, with due regard for the superior rights of a fit, proper, and suitable parent," *Id.* at 149, __ N.W.2d at __. I believe that that the last-cited principle is, indeed, the law in Nebraska and that the requirement that, before custody may be changed, the court must make an affirmative finding that a parent is unfit to perform the duties imposed by the relationship or has forfeited that right is neither a correct rule of law nor a sound rule of law.

I believe that we do a grave injustice to a parent when we require a court to make an affirmative finding of "unfitness" before custody may be changed because of the best interests of the child. While it is true that in a very technical sense the word "unfit"

may be broad enough to encompass both personal and situational deficiencies, the overwhelming impression left by the cases is that a finding of "unfitness" implies that the parent is morally corrupt or emotionally unstable.

While one may find early decisions of this court in which there is a requirement that an affirmative finding of unfitness be made (see, for example, *Clarke v. Lyon*, 82 Neb. 625, 118 N.W. 472 (1908)), we had and, I think, properly so, abandoned that strict requirement and, instead, spoke about the "best interests of the child" as the paramount consideration. In *Bigley v. Tibbs*, 193 Neb. 4, 8, 225 N.W.2d 27, 29 (1975), which the majority now disapproves, in part, we properly said "to the extent that Raymond v. Cotner, *supra*, [175 Neb. 158, 120 N.W.2d 892 (1963)] does not hold that the *first and primary* consideration in any case involving the custody of a child is the best interests of the child, it is overruled." (Emphasis supplied.)

To be sure, a parent may be afflicted with a terminal disease which prevents the parent from providing the child with the child's best interests. Shall we, therefore, require the court to make an affirmative finding that a terminally ill parent is "unfit" when, in fact, all we really mean to say is that it is in the best interests of the child that the custody be changed? In my view, we have imposed an unnecessary affirmative finding in these cases.

A review of the many cases decided by this court makes it quite clear that there is no clear and concise definition of "best interests of the child" and that each of the cases must depend upon its own particular facts at a particular time. To now, in effect, disregard that view and require an affirmative finding of unfitness is neither necessary nor proper. To be sure, superior rights of a fit, proper, and suitable parent should receive great consideration. Yet, there may be instances where permitting a child to remain with a fit, proper, and suitable parent may not be in the child's best interests

and we should not so tie the hands of the courts who must hear the evidence and decide each individual case, one by one. I, therefore, respectfully dissent from that portion of the opinion which now requires that a court must make an affirmative finding of unfitness before it may deprive a parent of the custody of a minor child, regardless of the child's best interests. I would continue to follow the rules which we have established in the *Bigley v. Tibbs* case and those which we have decided since that time. See, *State v. Loomis*, 195 Neb. 552, 239 N.W.2d 266 (1976); *Contreras v. Alsidez*, 200 Neb. 773, 265 N.W.2d 452 (1978); *Haynes v. Haynes*, 205 Neb. 35, 286 N.W.2d 108 (1979).

HASTINGS, J., concurring.

I agree with the result reached by the majority opinion and the statement that "Where the custody of a minor child is involved in a habeas corpus action, the custody of the child is to be determined by the best interests of the child, with due regard for the superior rights of a fit, proper, and suitable parent." *Ante* at 149, ___ N.W.2d at ___. However, I am opposed to turning the judicial clock back to 1963 and endorsing the holding of *Raymond v. Cotner*, 175 Neb. 158, 120 N.W.2d 892 (1963), which prohibits a court from depriving a parent of the custody of a minor child unless there is an affirmative showing of unfitness on the parent's part or he or she is shown to have forfeited such parental rights.

BOSLAUGH, J., joins in this concurrence.