ELLEN M. JACK, APPELLEE,
v. GREGORY J. CLINTON, APPELLANT.

609 N.W. 2d 328

Filed April 14, 2000.    No. S-98-1057.

Christopher A. Vacanti, of Cohen, Vacanti & Higgins, for appellant.

Stephanie Weber Milone for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## I. NATURE OF CASE

Ellen M. Jack (the mother) seeks further review of the decision of the Nebraska Court of Appeals reversing an order of the

district court for Douglas County which had modified a decree that dissolved the mother's marriage to Gregory J. Clinton (the father). See *Jack v. Clinton*, No. A-98-1057, 1999 WL 1063091 (Neb. App. Oct. 19, 1999) (not designated for permanent publication). In the modification order, the district court granted the mother, the custodial parent, permission to relocate to Pittsburgh, Pennsylvania, with the parties' two children. The district court had previously granted the mother temporary permission to move to Pittsburgh with the children. It is the district court's subsequent order permanently granting removal which is the subject of this appeal.

The father appealed the modification order permitting permanent removal to Pittsburgh to the Nebraska Court of Appeals. The Court of Appeals concluded that the district court abused its discretion in granting the mother's request for removal of the children from Nebraska based on the Court of Appeals' conclusion that removal was not in the children's best interests. We granted the mother's petition for further review. We reverse the judgment of the Court of Appeals and remand the cause with directions to reinstate the order of the district court permitting the mother to move to Pittsburgh with the children.

## II. STATEMENT OF FACTS

The parties were married October 21, 1983. They had moved to Omaha, Nebraska, earlier in 1983 so that the father could accept a position as a cellist with the Omaha Symphony Orchestra. The parties have two children, Jana Clinton, born February 3, 1990, and Haley Clinton, born July 7, 1993. The parties' marriage was dissolved on May 30, 1996. Pursuant to the terms of the decree of dissolution, the mother was awarded custody of the minor children, subject to the father's rights of reasonable visitation.

On April 28, 1997, the mother filed an application to modify the decree of dissolution and a motion requesting the court to grant her temporary permission to remove the children from Nebraska to Pittsburgh, pending a final hearing in the matter. On April 30, the mother filed an amended application to remove the children from the jurisdiction and to modify the decree. The father filed a brief in resistance to the motion for temporary removal.

A hearing was held May 14, 1997, on the mother's motion. Both parties were present and represented by counsel. On May 19, the district court issued its order granting permission for the temporary removal of the children to Pittsburgh until further order of the court and ordering the parties to attempt to agree between themselves concerning arrangements for visitation between the father and the children.

Following the grant of temporary removal, on May 29, 1997, the father filed an answer and application to modify, in which he requested orders to modify his child support and visitation schedule. The father did not petition for custody of the children; instead, he admitted that it was in the best interests of the children to continue to reside with the mother, "but only on condition that [the mother] remains in the State of Nebraska." The father's motion to modify child support was subsequently taken up at the hearing on permanent removal. Pursuant to the order granting temporary removal, the mother and the children moved to Pittsburgh in June 1997.

After the mother and the children had been in Pittsburgh for 1 year, trial was held on June 25, 1998, on the mother's application to permanently remove the children from Nebraska. Evidence was presented relative to the period during which the mother and the children had lived in Omaha and for the most recent 1-year period during which the mother and the children lived in Pittsburgh.

The record on appeal on which we base our decision is composed of evidence pertaining to the period prior to the temporary removal and to the period during which the mother and the children lived in Pittsburgh. In this regard, we note that the district court's grant of temporary removal followed by a hearing on permanent removal 1 year later had an obvious impact on the nature of the evidence presented at the hearing on permanent removal and illustrates the hazards of granting temporary removal, especially where the hearing on permanent removal is not promptly conducted thereafter.

During presentation of her case, the mother testified that her main purpose for moving to Pittsburgh was for her and the children to be closer to her extended family. The mother's father and stepmother and two of her sisters live in the Pittsburgh area.

Another sister lives in West Virginia, within a few hours of Pittsburgh. Neither the mother nor the father have extended family living in Omaha. The father's extended family lives in Milwaukee, Minneapolis, and Chicago.

The mother testified that an additional purpose in moving to Pittsburgh was to secure employment that would offer increased opportunities for income. The mother had begun employment with Mutual of Omaha as a claims service representative in 1988. In 1996, she was earning approximately $33,000 per year at Mutual of Omaha. As part of her benefit package, the mother maintained health insurance on the children for $38 per month and dental insurance for approximately $10 per month. The mother testified that prior to the temporary removal to Pittsburgh, she had been offered employment with Bankers Life and Casualty in Pittsburgh. The mother testified she accepted the position with the understanding that she would receive a $15,000 base salary plus commissions. In addition, as part of her benefits package, the mother was entitled to health insurance for herself and the children, after a 6-month waiting period, at a cost of $350 per month. Shortly after moving to Pennsylvania and starting the position with Bankers Life and Casualty, the mother learned that her earnings would be less than she had anticipated and that the $15,000 she thought was a base salary was in fact an estimated projection of what she could earn in that position. In December 1997, the mother left her employment with Bankers Life and Casualty and accepted a position with Aetna Insurance Company as a dental benefits specialist for $12 per hour or approximately $24,000 per year. As part of her benefits, she received health benefits for herself and the children at no cost to her. The mother testified the position at Aetna was similar to the position she had when she first started working at Mutual of Omaha in 1988, but that because of the respective sizes of the two companies, she had greater opportunity for advancement at Aetna than she had had at Mutual of Omaha. The mother further testified that her position at Aetna required less overtime than she had been required to perform at Mutual of Omaha and that she was therefore able to spend more time with the children.

The mother testified that in the year they had been in Pittsburgh, the children had adjusted well to the move. She tes-

tified that Jana was doing well in school and that both children were enrolled in dance classes. She testified that both children had made friends in Pittsburgh. The mother testified that she had not seen any adverse behavioral or emotional changes in the children since the move.

The father testified that he opposed the mother's application to remove the children from Nebraska to Pennsylvania because he is a very involved father who exercised his visitation consistently and regularly. The father introduced evidence that when the children were living in Omaha, he had exercised his right to visitation an average of 11 times per month. The father further testified that he was concerned that the long-distance relationship would affect his strong bond with the children and that he would no longer have daily interaction with them or "the ability to shape their lives in a meaningful way." Although the father testified that he planned to continue residing in Omaha, he admitted that he had auditioned for the National Symphony in Washington, D.C., the week before the trial and that he had auditioned for the Chicago Symphony at a time after the parties' divorce.

On September 4, 1998, the district court entered a modification order granting the mother permission to remove the children from Nebraska so that they could continue to reside with her in Pennsylvania. The order was based on the district court's finding that the mother had a legitimate reason for leaving Nebraska, that it was in the best interests of the children to continue to reside with the mother, and that the move to Pittsburgh was in the best interests of the children. The district court further ordered that the father be allowed visitation with the children at any time he is in the Pittsburgh area, that he have visitation for one-half of the Christmas holiday break and 6 consecutive weeks during the summer break, and that he have telephone visitation with the children. In addition, the district court ordered that the father should be responsible for the expense of transportation with regard to the visitations and that the father's child support obligation would abate by 50 percent during the 6-week summer visitation period.

The father appealed to the Court of Appeals, contending that the district court erred in modifying the decree to grant the

mother permission to remove the children from Nebraska to Pennsylvania. After concluding that removal from Nebraska was not in the children's best interests, the Court of Appeals determined that the district court had abused its discretion in granting the mother's request for removal and reversed the modification order of the district court. We granted the mother's petition for further review.

## III. ASSIGNMENTS OF ERROR

In her petition for further review, the mother contends the Court of Appeals erred (1) in determining that the district court abused its discretion in granting her request for permission to remove the children from Nebraska or, in the alternative, (2) in not remanding the cause to allow an opportunity to present additional evidence to the district court in accordance with *Farnsworth v. Farnsworth*, 257 Neb. 242, 597 N.W.2d 592 (1999).

## IV. STANDARD OF REVIEW

■ Child custody determinations, and visitation determinations, are matters initially entrusted to the discretion of the trial judge, and although reviewed de novo on the record, the trial judge's determination will normally be affirmed absent an abuse of discretion. *Id.* A judicial abuse of discretion requires that the reasons or rulings of a trial judge be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Id.*

## V. ANALYSIS

### 1. CONTROLLING ANALYSIS

■ We have long held that in considering a motion to remove a minor child to another jurisdiction, the paramount consideration is whether the proposed move is in the best interests of the child. *Id.*; *Evenson v. Evenson*, 248 Neb. 719, 538 N.W.2d 746 (1995). In *Farnsworth*, we clarified the method by which to analyze a motion to remove a minor child. In *Farnsworth*, we stated that in order to prevail on a motion to remove a minor child to another jurisdiction, "the custodial parent *must first* satisfy the court that he or she has a legitimate reason for leaving the state. . . . *After clearing that threshold*, the

custodial parent must next demonstrate that it is in the child's best interests to continue living with him or her." (Citation omitted.) (Emphasis supplied.) 257 Neb. at 249, 597 N.W.2d at 598. Evidence of a purported legitimate reason to leave the state can be readily evaluated. If the party seeking removal fails to establish a legitimate reason, the trial court's inquiry is concluded. If, however, the party seeking removal establishes a legitimate reason, then both parties shall present evidence regarding the child's best interests. With respect to the best interests analysis, *Farnsworth* indicates that the relevant considerations are ordinarily each parent's motive for seeking or opposing the move, the quality of life which would result from the move, and the impact relocation would have on the noncustodial parent's visitation. Under *Farnsworth*, an appellate analysis ought ordinarily to first analyze the reason for the proposed relocation and then analyze whether the proposed relocation is in the best interests of the children.

In its opinion, the Court of Appeals referred to *Farnsworth* as controlling authority. Nevertheless, in its decision, the Court of Appeals first considered whether the mother had demonstrated that it was in the children's best interests to continue to live with her in Pennsylvania. After having concluded that removal was not in the children's best interests, the Court of Appeals stated "we need not decide whether [the mother] proved that she had a legitimate reason for removing them from Nebraska." *Jack v. Clinton*, No. A-98-1057 1999 WL 1063091 at *4 (Neb. App. Oct. 19, 1999) (not designated for permanent publication). Furthermore, in the analysis of the children's best interests which it did undertake, the Court of Appeals stated that the mother's "*motives* for moving to Pennsylvania are (1) increased job opportunities and (2) to be closer to family." (Emphasis supplied.) Id. at *3. Contrary to the Court of Appeals' analysis, under *Farnsworth v. Farnsworth*, 257 Neb. 242, 597 N.W.2d 592 (1999) the evidence of job opportunities and presence of extended family go to the reasons for the proposed relocation and whether there is a legitimate reason for leaving the state, rather than the motives for seeking the move which are part of the best interests analysis.

Because the threshold determination in a removal case is whether the custodial parent has a legitimate reason for leaving the state, the Court of Appeals' analysis misapplied the approach set forth in *Farnsworth* when it considered the children's best interests before first considering whether the mother had met the threshold requirement of proving a legitimate interest in moving. In addition to approaching the analysis in a manner reverse to that indicated in *Farnsworth*, the Court of Appeals misperceived the mother's reason for the relocation with the motive for or against the relocation. Thus, the Court of Appeals' best interests analysis is flawed.

### 2. Legitimate Reasons for Relocation

Upon our de novo review of the record, we conclude that the mother met the threshold requirement of proving a legitimate reason for moving. We have recognized that job-related changes are legitimate reasons for moving where there is a " 'reasonable expectation of improvement in the career or occupation of the custodial parent,' " *Farnsworth*, 257 Neb. at 252, 597 N.W.2d at 600, quoting *Gerber v. Gerber*, 225 Neb. 611, 407 N.W.2d 497 (1987), and where the custodial parent's new job included increased potential for salary advancement, *Farnsworth, supra*; *Jafari v. Jafari*, 204 Neb. 622, 284 N.W.2d 554 (1979). The mother testified that at the time she accepted the offer from Bankers Life and Casualty in Pittsburgh, she expected her income would become competitive with her past employment with Mutual of Omaha and greater than what it subsequently proved to be. By the time of the hearing on the permanent removal, the mother had changed employment to Aetna, and she testified that her current job at Aetna offered greater potential for salary advancement than the job she had held at Mutual of Omaha. In addition, the mother testified her job at Aetna required less overtime than her job at Mutual of Omaha, allowing her to spend more time with the children. Although at the time of trial the mother's job in Pittsburgh did not pay as well as the job she had held in Omaha, there was sufficient evidence for the district court to conclude that the mother had a reasonable expectation for improvement in her career.

Furthermore, the mother testified that a significant additional reason for the move was to be closer to her extended family. Although career advancement and remarriage have commonly been found to be legitimate reasons for a move in removal cases, they do not compose the exclusive list of legitimate reasons. We recently concluded that a custodial parent's "firm offer of employment with a flexible schedule in close proximity to [the custodial parent's] extended family constitutes a legitimate reason" in a removal case. *Kalkowski v. Kalkowski*, 258 Neb. 1035, 1046, 607 N.W.2d 517, 526 (2000). In *Kalkowski*, our review of the record indicated that the custodial mother's "principal reasons for wishing to relocate to Canada [were] her desire to be near her extended family and her plan to pursue educational and employment opportunities there." 258 Neb. at 1045-46, 607 N.W.2d at 526. We found her reasons legitimate despite the fact that "she did not investigate educational opportunities in Nebraska and conducted only a limited investigation of employment opportunities in this state." *Id.* at 1046, 607 N.W.2d at 526.

The record in the instant case shows sufficient evidence for the district court to conclude that the mother's reasons for moving were legitimate. We conclude that the district court did not abuse its discretion in crediting the mother's testimony and in finding that she had proved a legitimate reason to move.

### 3. BEST INTERESTS

Having found that the mother met the threshold requirement of demonstrating a legitimate reason for the relocation, the next step under the *Farnsworth* approach is to determine whether the mother demonstrated that it was in the children's best interests to continue to live with her in Pittsburgh. Our de novo review of the record leads us to conclude that the district court did not abuse its discretion in finding that the children's move to Pittsburgh with the mother was in their best interests.

In *Farnsworth*, we set forth three broad considerations ordinarily to be employed in determining whether removal to another jurisdiction is in a child's best interests: (1) each parent's motives for seeking or opposing the move; (2) the potential that the move holds for enhancing the quality of life for the child and the custodial parent; and (3) the impact such a move

will have on contact between the child and the noncustodial parent, when viewed in the light of reasonable visitation arrangements.

### (a) Each Parent's Motives

In regard to each parent's motives, it appears that the parents each have valid motives for their respective positions on the issue of removal. The Court of Appeals found the father's motives for resisting the move were more compelling. We do not agree.

In its best interests analysis, the Court of Appeals dismissed the mother's career explanations for the move as "questionable" and her extended family explanations as "not . . . legitimate." *Jack v. Clinton*, No. A-98-1057, 1999 WL 1063091 at *3 (Neb. App. Oct. 19, 1999) (not designated for permanent publication). In *Farnsworth*, we stated that while some legitimate explanations "might seem less compelling than others . . . none should be summarily rejected at this stage of the analysis without weighing the other considerations and how they all come to bear on the overall impact on the child." 257 Neb. at 250, 597 N.W.2d at 598. The Court of Appeals "summarily rejected" what we have found to be the mother's legitimate reasons for moving under our earlier analysis of legitimate reasons for the relocation. To the extent that the mother's reasons for the move may be characterized as "motives," the Court of Appeals' dismissal of these explanations was perfunctory. We also note that with respect to her motive for the move, the mother testified that her purpose in moving was not an attempt to lessen in any way or interfere with the father's visitation.

We agree with the Court of Appeals that the father's motives in resisting the move were valid. The father

> was concerned that the long distance would affect his "strong bond with both girls," that he would no longer have "the everyday intervention with the kids, the ability to shape their lives in a meaningful way," and that phone contact they would maintain would be very impersonal, especially with his youngest child.

*Jack v. Clinton*, 1999 WL 1063091 at *3. We do not, however, agree that the father's motives were more compelling than the mother's. In *Kalkowski v. Kalkowski*, 258 Neb. 1035, 607

N.W.2d 517 (2000), the mother's motives, as discussed above, were similar to the mother's motives in this case. The father's motives in *Kalkowski* were also similar to the father's in this case. In *Kalkowski,* the father was concerned "about the effect relocation across an international boundary and 1,200 miles from his home would have on his relationship with his children." *Id.* at 1046, 607 N.W.2d at 526. We found in *Kalkowski* that the motives of each party were equally balanced. Similarly, we find that in the instant case, the motives of both parties are equally balanced.

### (b) Quality of Life

In determining the potential the removal to another jurisdiction holds for enhancing the quality of life of the mother and the children, pertinent factors include: (1) the emotional, physical, and developmental needs of the children; (2) the children's opinion or preference as to where to live; (3) the extent to which the mother's income or employment will be enhanced; (4) the degree to which housing or living conditions would be improved; (5) the existence of educational advantages; (6) the quality of the relationship between the children and each parent; (7) the strength of the children's ties to the present community and extended family there; (8) the likelihood that allowing or denying the move would antagonize hostilities between the two parties; and (9) the living conditions and employment opportunities for the mother because the best interests of the children are interwoven with the well-being of the custodial parent. See *Farnsworth, supra.*

The instant case differs from the typical removal case in that at the time of trial, the children had already been removed to Pittsburgh pursuant to a grant of temporary removal and had been living in Pittsburgh for 1 year. Therefore there was evidence in the record as to the quality of life actually experienced by the children in Pittsburgh. The mother testified that the children had adapted well to the move, were prospering in school, and had built ties to their new community in Pittsburgh. Although there was not specific testimony as to the children's preferences between Pittsburgh and Omaha, the mother's testimony indicates that the children were happy in Pittsburgh, and there is no evidence to the effect that the children wanted to

return to Omaha. The mother's testimony indicates that the housing and educational opportunities for the children were favorable in Pittsburgh. The children appeared to have strong ties to the mother's extended family in the Pittsburgh area, while none of the mother's or the father's extended family live in the Omaha area. Although the father's contact with the children had been reduced from the level it was when the children were in Omaha, it appears that he had been able to maintain a relationship with the children by visits during the year and telephone calls. The record does not indicate that the move antagonized hostilities between the mother and the father. The mother's living conditions and employment opportunities enhanced the mother's life and that of the children.

In summary, the evidence as to the children's and the mother's quality of life in Pittsburgh and the children's adaptation to the move demonstrate that the evidence supports the relocation to Pittsburgh.

### (c) Impact on Noncustodial Parent's Visitation

The final consideration is the impact of relocation upon the father's ability to maintain a meaningful relationship with his children. This consideration is to be viewed "in the light of the potential to establish and maintain a reasonable visitation schedule." *Farnsworth v. Farnsworth*, 257 Neb. 242, 251, 597 N.W.2d 592, 599 (1999). In the instant case, the Court of Appeals acknowledged that a reasonable visitation schedule had been ordered by the district court. The visitation schedule allows the father visitation with the children any time he is in Pittsburgh, during half of the children's Christmas school break, and during 6 consecutive weeks in the summer. The schedule also allows telephone visitation provided such calls terminate not later than 7 p.m. "Omaha time" on school nights. Another factor to be considered is "the noncustodial parent's interest in securing custody, as well as the feasibility and desirability of a change in custody." *Farnsworth*, 257 Neb. at 251, 597 N.W.2d at 599. In the instant case, the father did not petition for custody of the children; instead, he admitted that it was in the best interests of the children to continue to reside with the mother, albeit on the condition that she remain in Nebraska.

Although we recognize that the father's visitation will be less than it would have been had the mother and the children remained in Omaha, the district court fashioned a reasonable visitation schedule that will allow the father to maintain a meaningful relationship with the children. There was, therefore, no abuse of discretion in the district court's consideration of this factor.

Having examined the record in light of the approach set forth in *Farnsworth*, we conclude that the district court did not abuse its discretion in finding that the mother had a legitimate reason for leaving the state and that it was in the children's best interests to live with the mother in Pittsburgh. The decision of the Court of Appeals reversing the district court is reversed.

### 4. TEMPORARY REMOVAL PRIOR TO RULING ON PERMANENT REMOVAL DISCOURAGED

We note that the instant case was not a typical removal case in that at the time of the trial on the mother's motion to modify to permit permanent removal of the children from the state, the mother and the children had already been living outside the state for 1 year on the basis of the district court's earlier order granting temporary permission to remove. The evidence at trial was necessarily composed of facts pertaining to the period prior to the temporary relocation to Pittsburgh as well as the results of the mother's and the children's experience during their year in Pittsburgh. As a result of the grant of temporary removal, consideration of their year in Pittsburgh with respect to the legitimacy of the permanent move and the best interests of the children was unavoidable. Further, as a result of the grant of temporary removal, a denial by the district court of the mother's request to permanently remove would have required the children to make a move back to Omaha 1 year after having moved and adapted to their new location in Pittsburgh. The grant of temporary permission to remove children to another jurisdiction complicates matters and makes more problematic the subsequent ruling on permanent removal and encumbers appellate evaluation of the ultimate decision on permanent removal. Accordingly, we discourage trial courts from granting temporary permission to remove children to another jurisdiction prior

to a ruling on permanent removal and instead encourage them to promptly conduct a full hearing on permanent removal.

## VI. CONCLUSION

Following our de novo review, we conclude that the mother established a legitimate reason for leaving Nebraska and that the record demonstrates sufficient support for the district court's finding that it was in the children's best interests to continue to reside with the mother and to permanently move with her to Pittsburgh, Pennsylvania. We therefore conclude that the trial court did not abuse its discretion in granting the mother's request to permanently remove the children from Nebraska. The decision of the Court of Appeals reversing the district court's order is reversed. We reverse the judgment of the Court of Appeals and remand the cause with directions to reinstate the judgment of the district court.

REVERSED AND REMANDED WITH DIRECTIONS.

STEPHAN, J., concurring in the result.

Prior to seeking leave of court to relocate with her children from Omaha to Pittsburgh, the mother in this case sold her home in Omaha, purchased a home in Pittsburgh, gave notice of resignation from her employment in Omaha, and accepted new employment in Pittsburgh. She recited these facts in her application to modify the decree to permit relocation, representing that the employment she had secured in Pittsburgh "offers to her and the minor children a significantly better financial opportunity." In my view, this statement was disingenuous in that the mother knew or reasonably should have known that her new employment in Pittsburgh was not a career advancement, but, rather, a significant step backward in terms of salary and benefits compared to the position she left in Omaha. By the time of trial, she had obtained a different job in Pittsburgh at a salary which was still $9,000 per year less than she earned while employed in Omaha, representing a 27 percent reduction in her income. Based upon this evidence, I cannot agree with the conclusion of the majority that the living conditions and employment opportunities associated with the relocation "enhanced the mother's life and that of the children."

Cross-examination revealed that the only legitimate reason for the relocation was the mother's desire to live near her extended family. In considering the best interests of the children, I would regard this motive as being substantially outweighed by the father's interest in maintaining the regular and frequent visitation with his children which existed while the family lived in Omaha following the dissolution. See *Kalkowski v. Kalkowski*, 258 Neb. 1035, 607 N.W.2d 517 (2000). Viewed prospectively, I would regard an order permitting relocation by the custodial parent under these circumstances to constitute an abuse of discretion.

Unfortunately, that is not the posture in which this case reached the appellate courts. As a result of the unreviewable temporary order, relocation was a fait accompli by the time of the hearing on the merits in the district court more than 1 year later. In order to rectify what I believe to have been error by the trial court, it would be necessary to now uproot the children from the environment in which they have lived for nearly 3 years. As there is no indication that this environment is in any way harmful or unstable, I cannot conclude that requiring the children to move back to Nebraska at this stage of their lives would be in their best interests which, in the final analysis, is our paramount concern. Therefore, while I unequivocally agree with the majority's disapproval of temporary orders permitting relocation by custodial parents, I reluctantly concur in the result.

CONNOLLY and MCCORMACK, JJ., join in this concurrence.