STATE OF NEBRASKA ON BEHALF OF BRITTANAE M. COMBS, A MINOR CHILD, AND RONETTA McKINNEY, APPELLEES, V. ADRIAN S. O'NEAL, ALSO KNOWN AS ADRIAN S. BOLLING, APPELLANT.

662 N.W.2d 231

Filed May 27, 2003.   No. A-02-327.

Matthew Stuart Higgins, of Cohen, Vacanti, Higgins & Shattuck, for appellant.

Kathleen M. Schmidt for appellee Ronetta McKinney.

IRWIN, Chief Judge, and HANNON, Judge.

PER CURIAM.

## I. INTRODUCTION

Adrian S. O'Neal, also known as Adrian S. Bolling, is the biological father of Brittanae M. Combs, a minor child, and he appeals from an order of the district court for Douglas County granting Brittanae's maternal grandmother, Ronetta McKinney, custody of Brittanae. For the reasons set forth below, we affirm.

## II. BACKGROUND

Brittanae was born on February 23, 1988. Brittanae's biological mother, Ronda K. Combs, died when Brittanae was 19 months old. Ronda and Brittanae lived with Ronetta when Brittanae was born, and Brittanae remained with Ronetta after Ronda's death.

On June 3, 1996, Ronetta was appointed as Brittanae's legal guardian in the county court for Douglas County. On August 20, 1997, a paternity decree was entered in the district court, establishing Adrian as Brittanae's father and ordering Adrian to pay $331.42 per month in child support for Brittanae. The decree stated that Ronetta is Brittanae's legal guardian and that Brittanae was in Ronetta's physical custody at that time.

On November 7, 1997, Adrian filed a petition in the county court to terminate Ronetta's legal guardianship of Brittanae. The county court denied Adrian's motion when Adrian failed to appear for trial. The court entered judgment against Adrian by an order dated April 29, 1999.

On September 7, 1999, Adrian filed a second petition to terminate Ronetta's guardianship. Adrian's second petition went to

trial, and the county court found in Ronetta's favor by an order dated January 20, 2000. Adrian appealed, but this court dismissed Adrian's appeal for lack of progression on Adrian's part.

On September 7, 1999, simultaneously with the filing of his second petition to terminate the guardianship, Adrian filed an application to modify the paternity decree, requesting that Brittanae be placed in his custody. After two amendments, Adrian's application to modify went to trial on October 3.

At trial, Adrian testified that he had maintained a relationship with Brittanae since her birth. Adrian testified that although he did not start paying child support until the entry of the paternity decree in 1999, he had always told Ronetta to inform him if Brittanae needed anything and that he would then take care of it. Adrian testified that he has contacted Brittanae either in person or by telephone on at least a monthly basis since her birth. Adrian testified that he has wanted custody of Brittanae since Ronda's death.

Adrian testified that he is married, is 32 years old, and has two daughters with his wife. Adrian testified that he and his wife currently rent a three-bedroom home and that Brittanae would have her own room if she came to live with them. Adrian testified that he is employed at Lozier Corporation in shipping and receiving and has been at Lozier Corporation for 7 years.

The record shows that in August 1996, Adrian was charged with child endangerment after leaving one of his daughters, then age 2, locked in a car while he gambled at a casino riverboat. The record does not indicate the disposition of this charge.

Ronetta testified that Adrian first filed for custody of Brittanae when Brittanae was 9 years old. Ronetta testified that during the first 9 years of Brittanae's life, Adrian saw Brittanae off and on, with 3 months being the longest time between visits. Ronetta stated that Adrian never paid child support but did buy Brittanae clothes for Christmas, for her birthday, and at the beginning of the school year. Ronetta testified that generally, Adrian had some sort of monthly contact with Brittanae, either in person or over the telephone.

Ronetta testified that Brittanae calls her "Mom" and that she and Brittanae have a very close bond. Ronetta testified that she works 8 a.m. to 4:30 p.m. and that her husband, Claude

McKinney, is retired. Ronetta testified that on most days, Claude is home with Brittanae when she gets out of school.

Ronetta testified that Brittanae is an "A" student, participates in church activities, and has gone to various universities and colleges to explore career opportunities. Ronetta testified that Brittanae gets along well with Claude and that Brittanae and Claude engage in activities together.

Ronetta testified that Adrian has never attended Brittanae's parent-teacher conferences, inquired about Brittanae's teachers, or asked who Brittanae's friends are. Ronetta testified that Brittanae is afraid to express herself around Adrian and appears to be frustrated when interacting with Adrian. Ronetta testified that Brittanae is happy-go-lucky when she is at home with Ronetta and Claude and knows that she can talk to them about anything.

Brittanae testified that at the time of the trial, she was 13 years old. Brittanae testified that she has lived with Ronetta her entire life and calls Ronetta "[M]om." Brittanae testified that she and Ronetta are involved in activities together, that Ronetta knows Brittanae's friends and teachers, and that Ronetta attends Brittanae's parent-teacher conferences.

Brittanae testified that initially, she had a close relationship with Adrian's wife, but that they had drifted apart in the last month or two. Brittanae testified that Adrian's wife appears to be agitated with her and that she does not know why. Brittanae testified that the last time she stayed overnight with Adrian on a school night, Adrian did not get her to school on time the next day.

Brittanae testified that her room at Adrian's is actually a den with a bed and a dresser. Brittanae testified that her room has no door and that Adrian's family stores clothes and other personal items in her room. Brittanae testified that it is hard for her to do her homework at Adrian's because her half-sisters want to spend time with her and it is noisy.

Brittanae testified that at the time of trial, she really wanted to stay with Ronetta because of their close bond. Brittanae testified that because she had been with Ronetta her whole life, it would be extremely stressful or unbearable to move in with Adrian. Brittanae testified that at the time of trial, she did not want to live

with Adrian. Brittanae stated that she would like to spend one weekend a month, every Wednesday evening, alternating holidays, and 2 weeks in the summer with Adrian.

In an order dated February 25, 2002, the trial court found that while Adrian and Ronetta are both fit to have custody of Brittanae, the care, custody, and control of Brittanae should remain with Ronetta. Specifically, the court found that Adrian had forfeited his parental rights by failing to pay child support for Brittanae before she was 9 years old. The court also noted that the record showed that Adrian "was content to let Ronetta raise Brittanae, a duty that Ronetta carried out in excellent fashion and with excellent results." Based on its findings, the trial court found that it is clearly in Brittanae's best interests that she remain in Ronetta's care, custody, and control. The trial court awarded Adrian visitation with Brittanae every other weekend, every Wednesday evening, every Father's Day, on alternating holidays, and for 2 weeks in the summer.

Adrian appeals.

### III. ASSIGNMENTS OF ERROR

On appeal, Adrian argues that the trial court abused its discretion in granting custody of Brittanae to Ronetta, specifically by failing to apply the parental preference standard in determining Brittanae's custody.

### IV. STANDARD OF REVIEW

Child custody determinations, and visitation determinations, are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Vogel v. Vogel*, 262 Neb. 1030, 637 N.W.2d 611 (2002); *Jack v. Clinton*, 259 Neb. 198, 609 N.W.2d 328 (2000). A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Id.*

Where credible evidence is in conflict on a material issue of fact, an appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *State ex*

*rel. Reitz v. Ringer*, 244 Neb. 976, 510 N.W.2d 294 (1994), *overruled in part on other grounds, Cross v. Perreten*, 257 Neb. 776, 600 N.W.2d 780 (1999); *Hansen v. Hansen*, 240 Neb. 31, 480 N.W.2d 204 (1992).

## V. ANALYSIS

On appeal, Adrian argues that the trial court abused its discretion in granting custody of Brittanae to Ronetta, Brittanae's maternal grandmother, rather than him, Brittanae's biological father. Adrian contends that the court failed to properly apply the parental preference standard in determining Brittanae's custody.

The "parental preference doctrine" holds that in a child custody controversy between a biological parent and one who is neither a biological nor an adoptive parent, the biological parent has a superior right to custody of the child. *In re Stephanie H. et al.*, 10 Neb. App. 908, 639 N.W.2d 668 (2002), citing *In re Interest of Amber G. et al.*, 250 Neb. 973, 554 N.W.2d 142 (1996). A court may not properly deprive a biological or adoptive parent of the custody of the minor child unless it is affirmatively shown that such parent is unfit to perform the duties imposed by the relationship or has forfeited that right. *Id.*

Adrian's request to modify the paternity decree and award him custody of Brittanae turns this case into a custody dispute. Because the State has never attempted to terminate Adrian's parental rights and there is no contention that Adrian is currently unfit, we address the matter of forfeiture. Additionally, inasmuch as Adrian's fitness is not at issue, the evidence concerning the alleged child endangerment charge in 1996 will not be discussed any further.

Parental forfeiture means that parental rights " 'may be forfeited by substantial, continuous, and repeated neglect of a child and a failure to discharge the duties of parental care and protection.' " *In re Interest of Eric O. & Shane O.*, 9 Neb. App. 676, 685, 617 N.W.2d 824, 832 (2000). " 'An effective . . . forfeiture of parental rights may be effected by the indifference of a parent for a child's welfare over a long period of time.' " *Nye v. Nye*, 213 Neb. 364, 371, 329 N.W.2d 346, 350 (1983). The *Nye* court, quoting *Haynes v. Haynes*, 205 Neb. 35, 286 N.W.2d 108 (1979), stated:

"While it is true that a parent has a natural right to the custody of his child, the court is not bound as a matter of law to restore a child to a parent under any and all circumstances. The welfare of a child of tender years is paramount to the wishes of the parent where it has formed a natural attachment for persons who have long been in the relation of parents with the parents' approval and consent."

213 Neb. at 371, 329 N.W.2d at 350.

In the instant case, the record shows that Brittanae had resided with Ronetta for 13 years at the time of trial and that Ronetta raised Brittanae herself for 11½ of those years. It was not until the paternity action and the child support order that Adrian sought custody of Brittanae. In short, for many years, Adrian has been content to occupy the role of a noncustodial parent visiting Brittanae every month or so while Ronetta performed the day-to-day task of raising Brittanae. A consequence of Adrian's consent to this arrangement has been the formation of a strong bond between Ronetta and Brittanae. The fact is that Adrian has requested custody of Brittanae only at this late date, after years of apparent contentment with having Ronetta raise Brittanae. Thus, the relationship between Ronetta and Brittanae is now essentially that of natural parent and child.

■ The Nebraska Supreme Court has stated that a person standing in loco parentis to a child is one who has put himself or herself in the situation of a lawful parent by assuming the obligations incident to the parental relationship, without going through the formalities necessary to a legal adoption, and the rights, duties, and liabilities of such person are the same as those of the lawful parent. *In re Interest of Destiny S.*, 263 Neb. 255, 639 N.W.2d 400 (2002), citing *Weinand v. Weinand*, 260 Neb. 146, 616 N.W.2d 1 (2000).

The term "in loco parentis" refers to a person who has fully put himself or herself in the situation of a lawful parent by assuming all the obligations incident to the parental relationship and who actually discharges those obligations. *Weinand v. Weinand, supra.* Clearly, in the instant case, Ronetta has placed herself in the situation of Brittanae's lawful parent by assuming all the obligations of a lawful parent and discharging the same. In contrast, Adrian failed to pay child support for the first 9 years of Brittanae's life

even though Adrian knew that he was Brittanae's father. Adrian did not assume the obligations incident to being a parent, but was content to have contact with Brittanae once a month either by telephone or in person. It was not until the initiation of the paternity action that Adrian came forward to claim custody of Brittanae. The trial court found that by the above actions, Adrian had forfeited his parental rights, and on this record, we cannot find that the court erred in this regard.

Furthermore, Ronetta's continued custody of Brittanae is clearly in Brittanae's best interests. Neb. Rev. Stat. § 42-364(2) (Reissue 1998) provides that in determining a child's best interests in custody and visitation matters, the factors to be considered shall include, but not be limited to, the following:

> (a) The relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing;

> (b) The desires and wishes of the minor child if of an age of comprehension regardless of chronological age, when such desires and wishes are based on sound reasoning;

> (c) The general health, welfare, and social behavior of the minor child; and

> (d) Credible evidence of abuse inflicted on any family or household member.

In addition to the statutory considerations discussed above, courts may consider the moral fitness of the parents, including their sexual conduct; the respective environments each offers; the emotional relationship between the child and the parents; the age, sex, and health of the child and parents; the effect on the child as the result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; and the capacity of each parent to provide physical care and to satisfy the needs of the child. *McDougall v. McDougall*, 236 Neb. 873, 464 N.W.2d 189 (1991); *Anderson v. Anderson*, 5 Neb. App. 22, 554 N.W.2d 177 (1996).

At trial, Brittanae, then 13 years old, testified that she wanted to live with Ronetta, not Adrian, and that because she had been with Ronetta her whole life, it would be extremely stressful or unbearable to move in with Adrian. Brittanae testified that it is difficult to do her homework at Adrian's home because it is noisy

and because Brittanae's bedroom at Adrian's has no door. Additionally, there is evidence that Brittanae has a strained relationship with Adrian's wife, while the evidence shows that Brittanae and Claude are close and get along well. The evidence shows that Ronetta engages in activities with Brittanae, knows her teachers and friends, and attends Brittanae's parent-teacher conferences. In contrast, the evidence shows that Adrian does not know Brittanae's teachers, may not know Brittanae's friends, has not inquired about Brittanae's grades, and does not attend Brittanae's parent-teacher conferences. Given this evidence, it is clearly in Brittanae's best interests to remain with Ronetta.

## VI. CONCLUSION

After reviewing the record, we conclude that the trial court correctly applied the parental preference doctrine and did not abuse its discretion in granting custody of Brittanae to Ronetta. Thus, we affirm the trial court's order granting Ronetta custody of Brittanae.

AFFIRMED.

CARLSON, Judge, participating on briefs.

IRWIN, Chief Judge, dissenting.

I respectfully dissent from the conclusion reached by the majority that the trial court correctly applied the parental preference doctrine in this case. It is not clear that the trial court correctly applied the doctrine; nor does the evidence support a finding that Adrian forfeited his parental rights. Additionally, the fact that Ronetta may or may not have been in loco parentis to Brittanae is not appropriately considered in determining forfeiture.

### 1. DISTRICT COURT ORDER

First, as noted above, it is not clear that the trial court correctly applied the parental preference doctrine. Not only did the district court erroneously conclude that Ronetta is not an "unrelated" third party for the purpose of this discussion, but the district court was also less than clear in concluding that there was, in fact, a forfeiture of parental rights by Adrian.

In the order denying Adrian's application for custody, the district court recognized the principal tenets of the parental preference doctrine as iterated in this court's opinion in *In re Interest of Eric O. & Shane O.*, 9 Neb. App. 676, 617 N.W.2d 824 (2000).

Specifically, the district court recognized that " 'Nebraska law creates a "presumption" in favor of child custody with a biological parent as against an unrelated third party.' " See *id.* The district court then specifically found that "Ronetta is the grandmother of Brittanae, <u>not</u> an 'unrelated third party.' " (Emphasis in original.)

In *Blecha v. Blecha*, 257 Neb. 543, 599 N.W.2d 829 (1999), the Nebraska Supreme Court was confronted with a case in which a minor child sought to be placed in the custody of his maternal grandmother and aunt. In *Blecha*, the court applied the parental preference doctrine to conclude that the biological father's natural right to the custody of his child trumped the interest of "strangers to the parent-child relationship." 257 Neb. at 547, 599 N.W.2d at 832. In so doing, the court implicitly recognized that the maternal grandmother and aunt were "unrelated" persons in the context of the parental preference doctrine because, despite the fact that they were extended family members, they were not biological parents of the child. See, also, *Mair v. James*, No. A-00-016, 2001 WL 537062 (Neb. App. May 22, 2001) (not designated for permanent publication) (Nebraska Court of Appeals, citing *Blecha v. Blecha, supra*, explicitly held that anyone other than natural parent is considered unrelated, even if he or she is actually extended family member).

The district court was wrong to conclude that Ronetta is not an unrelated third party for the purpose of applying the parental preference doctrine. Because the district court made this incorrect conclusion prior to applying the parental preference doctrine, it is not clear that the trial court actually decided this case on the basis of the parental preference doctrine.

The majority opinion indicates that the district court found that Adrian had forfeited his parental rights by failing to pay child support for Brittanae before she was 9 years old. More specifically, the district court actually stated that "[t]here has been, *to some extent*, 'parental forfeiture' by Adrian." (Emphasis supplied.) In light of the court's erroneous conclusion that Ronetta was not an unrelated third party, which erroneous conclusion happened to be the sentence immediately preceding the district court's indication of "some extent" of forfeiture, it is less than clear that the district court actually based the decision in this case on an application of the parental preference doctrine.

The district court went to some length to quote propositions of law concerning the best interests of the child in custody determinations. After erroneously concluding that Ronetta is not an unrelated third party and indicating that there had been some extent of parental forfeiture, the district court concluded that Brittanae's best interests would be served by her remaining in Ronetta's custody. It is less than clear that the district court actually found the parental preference doctrine applicable and that Ronetta was entitled to custody because Adrian had forfeited his parental rights.

### 2. Parental Preference Doctrine

Even assuming that the district court did apply the parental preference doctrine in resolving this custody dispute, the record does not contain adequate evidence to rise to the level necessary to conclude that Adrian has forfeited his parental rights. There is not sufficient evidence to conclude that Adrian has engaged in substantial, continuous, and repeated neglect of or indifference to Brittanae's welfare over a long period of time.

In *Nielsen v. Nielsen*, 207 Neb. 141, 296 N.W.2d 483 (1980), the Nebraska Supreme Court annunciated that prior rulings to the contrary notwithstanding, courts may not properly deprive a parent of the custody of a minor child unless it is affirmatively shown that such parent is unfit to perform the duties imposed by the relationship or has forfeited that right. The Supreme Court also noted that the right of a parent to the custody of his minor child is not lightly to be set aside in favor of more distant relatives. *Id.*

Since the opinion in *Nielsen v. Nielsen, supra*, a finding of forfeiture of parental rights has proven to be a high hurdle to overcome. See, *Blecha v. Blecha*, 257 Neb. 543, 599 N.W.2d 829 (1999); *Mair v. James*, No. A-00-016, 2001 WL 537062 (Neb. App. May 22, 2001) (not designated for permanent publication); *In re Interest of Eric O. & Shane O.*, 9 Neb. App. 676, 617 N.W.2d 824 (2000). Compare *Nye v. Nye*, 213 Neb. 364, 329 N.W.2d 346 (1983). The above cases all include facts that are, in many respects, comparable to those of the present case.

In *In re Interest of Eric O. & Shane O., supra*, we found no forfeiture of parental rights despite the facts that the minor children

had resided with a third party for nearly 6 years, several with the express consent of the natural father, and that the natural father had entered a stipulation to establish a legal guardianship over the children by the third party. In *Mair v. James, supra*, we found no forfeiture despite the facts that the minor child lived with a third party for a period of approximately 7 years, the father visited the child only once in the 2 years prior to his seeking custody, and the father became more than $4,000 delinquent in child support even after support was ordered by the court. We recognized that while the father did not completely perform his parental obligations and could have performed more consistently, the evidence did not rise to the level required to find forfeiture.

Parental forfeiture means that a parent may forfeit his or her parental rights by substantial, continuous, and repeated neglect of a child and failure to discharge the duties of parental care and protection. *In re Interest of Eric O. & Shane O., supra*. Further, forfeiture may be effected by a parent's indifference to a child's welfare over a long period of time. *Id*. There is simply no evidence in this record of long-term " 'careless indifference,' " *id*. at 686, 617 N.W.2d at 832, to Brittanae.

Although Adrian consented to Brittanae's living with Ronetta for much of her life prior to these proceedings, he did not substantially, continually, or repeatedly neglect Brittanae or demonstrate indifference to her welfare. Rather, the record indicates that Adrian has had some presence in Brittanae's life since her birth. Adrian testified that he had some contact with Brittanae, either by telephone or in person, on at least a monthly basis since her birth. Ronetta generally confirmed this testimony, indicating that a period of 3 months would have been the longest period of time without contact from Adrian during Brittanae's life. Adrian testified that although he did not pay child support until the paternity decree was entered, he told Ronetta that he would take care of providing items that Ronetta informed him Brittanae needed. Ronetta acknowledged that Adrian bought Brittanae clothes for Christmas and birthdays, as well as at the beginning of the school year. Additionally, there is no indication that Adrian has failed to remain current with his child support obligation in the 6 years after the paternity decree was entered or that he failed to judiciously exercise his visitation rights.

It is not clear how the above record indicates substantial, continuous, and repeated neglect of or long-term indifference to Brittanae's welfare. Although it may well be true that Adrian has occupied the role of a noncustodial parent while Ronetta has performed the day-to-day tasks of raising Brittanae, Adrian has had continuous involvement with Brittanae during her entire life, including financial support for several years prior to these proceedings.

### 3. In Loco Parentis

The majority opinion focuses on the facts that Ronetta and Brittanae share a significant bond and that Ronetta has assumed a position in loco parentis to Brittanae. While this may be true, there is no authority for allowing such a position to supplant the parental preference doctrine.

This specific issue was raised and addressed in *Mair v. James*, No. A-00-016, 2001 WL 537062 (Neb. App. May 22, 2001) (not designated for permanent publication). Although we concluded in that case that the record did not support a finding of in loco parentis, we further concluded that even if the third party was in loco parentis to the child, the parties had cited no authority "holding that a fit natural parent who has not forfeited his or her superior right to custody can by supplanted by one who stands in loco parentis." *Id.* at *3. Similarly, there is no authority for reaching such a conclusion in the present case.

### 4. Resolution

The circumstances of the present case are extremely difficult. On the one hand is Adrian, a biological parent who seeks to have custody of his child over an unrelated third party. Adrian has not performed his parental responsibilities as well as he could have, but he has maintained a consistent and steady relationship, both physical and financial, with Brittanae. On the other hand is Brittanae, a teenage girl who has really only ever known Ronetta as a mother. Although Brittanae wants to have a relationship with Adrian, her personal preference is to remain in Ronetta's custody.

Despite the factual circumstances surrounding Ronetta and Brittanae's relationship, the legal principles in this case dictate that the parental preference doctrine must be applied. Absent a

finding of unfitness or forfeiture, the courts may not deprive Adrian of his superior parental right to custody. The evidence in this case simply does not rise to a sufficient level to clear the hurdle of forfeiture because the evidence does not demonstrate a substantial, continuous, or repeated neglect of or long-term indifference to Brittanae's welfare. As such, the district court's judgment denying Adrian's request for custody should be reversed.