IN RE INTERESTS OF LETA HAMILTON, TINA HAMILTON, AND BOBBI JO HAMILTON, CHILDREN UNDER 18 YEARS OF AGE. STATE OF NEBRASKA, APPELLEE, V. LINDA HAMILTON, NATURAL MOTHER, APPELLANT.

283 N. W. 2d 66

Filed September 11, 1979. No. 42307.

Michael C. Washburn of Starr, Slowiaczek & Washburn, P.C., for appellant.

Donald K. Knowles, Douglas County Attorney, and Robert E. Huston, for appellee.

Heard before BOSLAUGH, CLINTON, and WHITE, JJ., and HAMILTON and HENDRIX, District Judges.

HENDRIX, District Judge.

This is an appeal from an order of the Separate Juvenile Court for Douglas County, Nebraska, terminating the parental rights of Linda Hamilton, now Linda Floyd, in three of her children, Leta, Tina, and Bobbi Jo Hamilton. The appellant will hereafter be referred to as Linda.

The original petition was filed by a deputy county attorney on September 7, 1976, and stated that Linda was the mother and Roberto Cantu was the father of the children. The petition further alleged dependency based upon section 43-202 (1), R. S. Supp., 1975, and neglect based upon section 43-202 (2)(b), R. S. Supp., 1975. A guardian ad litem for the children and attorneys for Linda and Roberto Cantu were appointed. Hearings were held regarding detention, evaluation, and review. On June 9, 1977, and pursuant to the stipulation of the parties, the children were adjudged dependent and the charge of neglect was dismissed. On June 9, 1977, and again at a review hearing on January 6, 1978, custody of the children was placed in the Douglas County Social Services at the home of Linda. At this time jurisdiction of the court over Roberto Cantu was terminated, he

having died. Linda was ordered to make certain efforts to correct deficiencies in the care of the children. On March 21, 1978, a supplemental petition was filed alleging failure to correct the condition leading to the determination of dependency and praying for termination of parental rights. On March 30, 1978, a detention hearing was held at which Linda failed to appear, and an adjudication hearing was held on May 17, 1978, and again Linda failed to attend. Further disposition hearing was held on July 3, 1978, with Linda present. On that date the court terminated parental rights under authority of section 43-209 (6), R. S. Supp., 1976. Upon a motion for new trial being overruled, this appeal was lodged. We affirm the judgment of the Separate Juvenile Court.

Facts recited to support the dependency stipulation were that just prior to the filing of the original petition the children were found very dirty and alone in a very dirty apartment. The children had the back panel off of a television set so that the wires were exposed and in reach of the children. One of the children had a wound on her foot that was swollen and evidently untreated. There was also mention of a bad condition regarding warm winter clothing.

During the pendency of the action, the court set down and continued conditions designed to correct the dependency. Guidance and supervision was ordered and provided by a number of persons throughout Douglas County. The court held hearings and admonished. Notwithstanding these efforts, however, there was no substantial improvement in the care which Linda gave the children. They continued to be dirty and ill-clothed. In a report of the supervisor of a day care center dated February 16, 1978, it was stated that the children had worn the same clothes every day since January 18th. At the center, it was frequently observed that Bobbi Jo

had on no underwear. She wore clothes that had not been cleaned for an entire week and continued to wear them the following week without cleaning. It was necessary for the personnel at the day care center to bathe the children and clean their clothes. The children were seen without mittens or hats in very cold weather. Court-directed attendance at the day care school was only sporadic. When contacted, Linda expressed little concern in this regard. Leta, the only child of school age, had nine unexcused absences from school in the first quarter of the 1977-78 school year which consisted of 42 days, and 20 unexcused absences in the second quarter which consisted of 47 days. Linda did not keep appointments with the supervising officers, and both a supervising probation officer and a supervising service officer stated that during certain periods they were successful in contacting Linda only two times in 10 visits to the home. Linda did not maintain contact with supervising personnel, her counsel, or the court. Linda failed to attend many of the positive parenting classes prescribed. The children expressed love for their mother, and are comfortable in her presence. However, during the course of this matter the children have been in a foster home or homes. Upon the infrequent visits by Linda to foster homes, the conduct and attitude of the children reveal a minimal trauma in the separation. In May of 1978 Linda was married to Jessie Floyd. While it appears that this might provide a more stable environment for Linda, there is no evidence that the marriage would materially affect Linda's care of the children.

The claim made on behalf of Linda is that the trial court may have used the wrong standard of proof in disposition. In findings made at the adjudication hearing, the trial court stated certain allegations in the supplemental petition to be true by a preponderance of the evidence. No findings were made of

either proof by clear and convincing evidence or proof beyond a reasonable doubt. The claim is that in termination of parental rights, such additional standards should be used.

A similar contention was made in State v. Souza-Spittler, *ante* p. 503, 283 N. W. 2d 48, decided September 4, 1979. In that case we said: "While our statute, section 43-206.03(3), R. R. S. 1943, specifies that the initial finding of jurisdiction may be based on a preponderance of the evidence, it does not specify a standard for termination, nor did the juvenile court specifically relate the standard which it applied. We agree that termination should be based on clear and convincing evidence. Because we are convinced, however, that the evidence before the juvenile court clearly satisfied even the stricter 'clear and convincing' standard, we decline to reverse on this ground. Although findings of fact by the juvenile court are accorded great weight, the matter is triable de novo in this court. See ss. 43-238 and 25-1925, R. R. S. 1943." If, on trial de novo, we find the order terminating the parental rights of Linda is supported by clear and convincing evidence, we must affirm.

An examination of the record reveals an initial dependency by agreement of the parties. It further reveals, throughout the entire court proceedings, a period of about 22 months, the continued neglect of the children by Linda. The court and the people of Douglas County provided an abundance of guidance, supervision, encouragement, and discipline. It was, however, to no avail. Under these circumstances the children will benefit from, and the people of the State of Nebraska have a right to impose, conditions which may distrub the parent-child relationship. The decision of the Separate Juvenile Court was supported by clear and convincing evidence and should be affirmed.

AFFIRMED.