IN RE INTEREST OF O'DONNELL.
STATE OF NEBRASKA, APPELLEE, V.
JOHN EDWARD O'DONNELL, JR., APPELLANT.

299 N.W.2d 428

Filed December 1, 1980.  No. 43017.

Dennis B. Smouse for appellant.

Donald L. Knowles, Douglas County Attorney, and Francis T. Belsky for appellee.

Heard before KRIVOSHA, C.J., McCOWN, BRODKEY, and HASTINGS, JJ., and STUART, District Judge.

HASTINGS, J.

John Edward O'Donnell, Jr., appeals from the order of the Separate Juvenile Court of Douglas County, Nebraska, which terminated his parental rights to his three sons, now aged 5, 4, and 3 years. O'Donnell assigns as error that the decision was not supported by sufficient evidence and the decision was contrary to law. We affirm.

The O'Donnell children were originally removed from their mother's home on December 19, 1977, because of filthy living conditions and the poor physical condition of the children. On January 13, 1978, a petition was filed in the Separate Juvenile Court alleging that the three boys came within Neb. Rev. Stat. §§ 43-202(2) (b) and 209(2) (Reissue 1978). Section 43-202(2) (b) gives the juvenile court exclusive original jurisdiction as to any minor child "who lacks proper parental care by reason of the fault or habits of his parent, guardian, or custodian." Section 43-209(2) gives the court authority to terminate parental rights when it is in the best interests of the child and "The parents have substantially and continuously or repeatedly neglected the child and refused to give the child necessary parental care and protection."

The court placed the children in the temporary custody of Douglas County Social Services for placement in a foster home. The matter came up for an adjudication hearing on April 10, 1978, but was continued because the mother was not present. On August 1, 1978, the adjudication hearing was held, although the mother was again not present, and it was adjudged that the children came within the meaning of

§§ 43-202(2) and 209(2) and that the children should remain in temporary custody; and the parental rights of both parents were taken under advisement pending a predisposition evaluation. After several hearings and continuances, the matter came up for a disposition hearing on February 5, 1979. The court ordered that the parental rights remain under advisement and that the father should comply with a plan set forth by the court and to be supervised by Douglas County Social Services and the Separate Juvenile Court.

The court-ordered plan required the father to do the following: maintain adequate housing with suitable furnishings; participate in a positive parenting group weekly; maintain an adequate savings account; maintain regular visitation with the children; cooperate with the child protective services worker and juvenile court service officer to comply with this plan; and inform juvenile officials as to any change of address. The court further ordered the father to reimburse the Douglas County Social Services foster care unit in the sum of $100 per month for the care of the children.

A review hearing was held on June 4, 1979, at which time the court ordered extended overnight visits with the father for the three children, and left in force the February 5 order. A review hearing was again held on August 13, 1979, at which time additional reports were received from the juvenile court service officer and the representative of Douglas County Social Services. On August 20, 1979, an order was entered finding that the natural parents failed to take action to eliminate the conditions which led to the findings as to §§ 43-202(2) and 209(2), and that it was in the best interests of the minor children that the parental rights be terminated. The father only has appealed from the denial of a motion for a new trial.

A review of a juvenile case is by trial de novo and the order terminating parental rights must be supported by clear and convincing evidence. *State v.*

*Burger*, 205 Neb. 340, 288 N.W.2d 22 (1980). The custody of a child is to be determined by the best interests of the child, keeping in mind that a court may not deprive the natural parents of custody unless it is shown that such parents are unfit to perform the duties imposed by the relation, or that they have forfeited that right. *State v. Best*, 173 Neb. 483, 113 N.W.2d 650 (1962).

The father has argued that the decision to terminate his parental rights is not supported by clear and convincing evidence. In fact, he maintains that if the mother of the children had been a better housekeeper, the petition in this matter would probably not have been filed. Most of the facts surrounding the findings as to neglect and failure to provide necessary parental care and protection are not in dispute.

Before the children were removed from the home, they were, on approximately 30 occasions, observed to be clothed in insufficient clothing; there were no sheets on their beds day or night; their bodies were in generally poor condition hygienically; the home was rarely stocked with a sufficient supply of foodstuffs even though the mother was eligible for food stamps and food commodities; the residence was usually in complete disarray and the odor of urine permeated it; and the children were always observed in urine-soaked diapers and often lying on urine-soaked mattresses. The children were sometimes left without adult supervision. The youngest child was diagnosed a "failure to thrive secondary to maternal social factors"; the back of his head was flat; and he was at first thought to be retarded and deaf because he did not respond to his environment. After several months in foster care and a great deal of attention, he is now an attractive and normal child.

The second child had several developmental delays, and when taken into custody, had severe diaper rash that essentially covered his entire body. His mother testified that he had had the rash since he was

1 month old, and it should be noted that he was taken into custody when he was 15 months old.

The father of the children took the position throughout the proceedings that his wife was not a good housekeeper and did not clean the home or care for the children's needs adequately. He testified that he essentially left the care of the children up to their mother, and it was she who neglected her duties. The father admitted that he had changed a wet diaper only two times in the approximately 2½ years before the children were placed in foster care. He never cleaned the house and only occasionally watched the children. Mr. O'Donnell testified, "See, I was brought up an old fashioned person. I go to work, I take care of the finances and she stays home and takes care of the house and kids. It's as easy as that." He testified that he recognized that the children had been neglected and that his wife was not caring for them properly. However, he did not attempt to remove the children from the wife's care, nor would he himself provide for the children's needs.

The children's mother testified that when her husband was not living with her and she was receiving Aid to Families with Dependent Children (ADC), her husband would take her to cash the monthly check and give her only enough money to pay the rent and buy half of her allotted food stamps. The rest of the money he would keep for himself or spend on car repairs. Mrs. O'Donnell testified that the reason she allowed her husband to keep this money was the fear of being beaten by him. Mrs. O'Donnell further testified that her husband had a bad employment history and contributed very little to the support of herself or their three children. This is corroborated by the testimony of Mr. O'Donnell, as well as by his own mother.

There is sufficient evidence that Mr. O'Donnell was not in compliance with the court-ordered plan which set out factors to correct the conditions leading to the findings of neglect and failure to provide for the necessary parental care and protection of the three

children. Mr. O'Donnell contributed only a total of $150 for the support of his children over a 6-month period, in spite of a court order requiring him to contribute $100 per month. During this time period, Mr. O'Donnell had purchased a new 1979 Mustang automobile with car payments of $179 per month, plus $24 per month on the loan for the downpayment. He failed to obtain adequate housing and an adequate savings account, and did not fully take advantage of the extended visitation privileges. The father had an adequate opportunity to correct the conditions that led to the findings of neglect. He did not do so.

Neither are we convinced by the argument that the father of the children should not be blamed for the mother's failure as a housekeeper and mother. Both parents have the duties as described in Neb. Rev. Stat. §§ 43-201 et seq. (Reissue 1978), as well as those inherent in the parent-child relationship. A father cannot delegate those duties to the mother of his children and expect to be held harmless if she neglects the children. There is no question that the poor sanitary conditions and poor physical hygiene worked to the physical injury of the children.

The evidence is clear and convincing that the order terminating the parental rights of the father is supported by the facts and circumstances. The order of the Separate Juvenile Court is affirmed.

AFFIRMED.