IN RE INTEREST OF SHAWNA KIMSEY, A MINOR CHILD.
STATE OF NEBRASKA ET AL., APPELLANTS, V.
DENNIS KIMSEY, APPELLEE.

302 N.W.2d 707

Filed March 6, 1981.   No. 43145.

James D. Livingston, guardian ad litem, of Cunningham, Blackburn, VonSeggern, Livingston, Francis & Riley, for appellant Shawna.

Richard E. Weaver for appellant State.

Duane A. Burns of Mayer, Burns & Mayer for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

WHITE, J.

This is an appeal by the State of Nebraska and the guardian ad litem of Shawna Kimsey, minor child born December 4, 1976. The appellants assign as error

the District Court's finding that there was no clear and convincing evidence presented to justify the county court's termination of parental rights of the father, Dennis Kimsey, to Shawna Kimsey. The mother's parental rights to the child were also terminated in the county court; she appealed, and the District Court affirmed the decision of the lower court. She did not appeal here and that matter is not before us.

After a hearing on September 1, 1977, the court held that Shawna Marie Kimsey was a child within the meaning of Neb. Rev. Stat. § 43-202(2)(e) (Reissue 1978), "who is in a situation or engages in an occupation dangerous to life or limb or injurious to the health or morals of such child." Dennis and Karin Kimsey were allowed to retain custody of the child, but under the supervision of the Hall County Department of Welfare for a period of 1 year. As part of the court order, Karin was ordered to attend Alcoholics Anonymous meetings for a period of 1 year and Dennis was ordered to attend Al-Anon meetings for the same period of time.

On October 28, 1977, Karin Kimsey gave birth to a second child, Cynthia. The child was born with multiple physical and psychological problems. The court was informed by counsel at oral argument that Cynthia Kimsey had died during the pendency of the appeal, after having spent substantially all of her short life either in a hospital or in the care of foster parents.

On November 4, 1977, an Alcoholics Anonymous sponsor found Karin Kimsey intoxicated and passed out in her apartment and notified the welfare department. The department of welfare took temporary care of Shawna Kimsey. There was another hearing on November 9, 1977. As a result of that hearing, physical custody of Shawna was given to Dennis under the supervision of the Hall County Department of Welfare, but actual physical possession of the child was given to Dennis' father and stepmother.

In March 1978, and in violation of a court order, Dennis removed the child from Nebraska to Le Mars, Iowa. The child was recovered by Iowa authorities on March 6, 1978, initially placed in Children's Village, and then returned to Dennis' stepmother.

On March 14, 1979, Dennis' stepmother was stricken with an illness and Shawna was taken from her and placed in another temporary foster home. Again, on April 29, 1979, Shawna was removed from that temporary foster home and sent to another. Shawna had begun exhibiting evidence of severe emotional insecurity, determined to be a direct result of the many and various environments which she had been placed into and then removed from. Shawna was admitted to St. Francis Hospital in Grand Island, Nebraska, for treatment of serious nervous and psychiatric disorders, and on June 28, 1979, she was taken to the Nebraska Psychiatric Institute. Subsequently she was placed in yet another foster home.

The final termination hearing in the county court was held on July 13, 1979, 2 years after the initial hearing. By the time of this hearing, the court had received recommendations to terminate parental rights of both parents from representatives of the Hall County Department of Welfare, the Plains Area Mental Health Center at Le Mars, Iowa, and the Iowa Department of Social Services, Plymouth County, Iowa. The court also heard evidence that Dennis and Karin had been divorced on June 4, 1979, and finally determined that the best interests of the minor dictated that the parental rights of both Karin and Dennis be terminated. Dennis Kimsey then appealed the termination of his rights to the District Court for Hall County.

The District Court reversed the order of the Hall County Court and ordered that legal custody of Shawna Kimsey be given to Dennis and that physical custody be given to his natural mother who lives in Missouri. As of the date of the hearing, Shawna had

only recently become slightly acquainted with this woman.

We are concerned with one assignment of error, i.e., whether the District Court erred in finding that there was not clear and convincing evidence presented to justify the termination of Dennis Kimsey's parental rights to Shawna Kimsey. Under Neb. Rev. Stat. § 43-209 (Reissue 1978), a person's parental rights may be terminated only upon presentation of clear and convincing evidence. *State v. Souza-Spittler*, 204 Neb. 503, 283 N.W.2d 48 (1979); *State v. Hamilton*, 204 Neb. 537, 283 N.W.2d 66 (1979).

The right of a parent to maintain the custody of his or her child is a natural right subject only to the paramount interest which the public has in the protection of the rights of a child. *Linn v. Linn*, 205 Neb. 218, 286 N.W.2d 765 (1980); *State v. Metteer*, 203 Neb. 515, 279 N.W.2d 374 (1979). Further, in a proceeding to terminate parental rights under § 43-209(6), there must be a determination that the child is one described in subsection (1) or (2) of § 43-202 and that reasonable efforts, under the direction of the court, have failed to correct the conditions leading to that determination.

The county court first determined that Shawna was a neglected child when her mother was arrested for public drunkenness and it was discovered that her mother was an alcoholic. Although the record shows that Karin Kimsey has struggled to overcome her alcoholism, she has not yet succeeded. Karin has been an inpatient at a number of alcoholism treatment centers in both Nebraska and Iowa, and at the time of trial she was residing in a halfway house in Iowa.

Some background is necessary. Karin Kimsey is a native of Germany and the mother of a young girl who lives there still. It appears from the record that when Dennis married Karin he promised that they would continue to live in Germany after their marriage so that Karin could keep in contact with her daughter. For reasons not shown in the record, that promise

was not kept and the parties transferred to Nebraska. While they were living in Grand Island, Nebraska, Dennis was an over-the-road truckdriver and was away from home far more frequently than he was present. Karin was essentially alone and friendless in a strange community and she turned to alcohol as a solace. It was to this alcoholic condition that the first efforts of the county court of Hall County were directed in an effort to rehabilitate Karin and to help her conquer the alcoholism. It is not necessary to relate the evidence in detail. Dennis made little, if any, attempt to attend or benefit from counseling sessions. Finally, he abandoned the Al-Anon sessions altogether, continued to offer little or no support to Karin in her attempt to eliminate her alcoholism problem, and saw his daughter Shawna only infrequently, if at all.

When he removed himself to Le Mars, Iowa, it was with the pronounced intention of eliminating the overnight stays and being at home more often to assist his wife. However, in addition to his regular work schedule, which would have brought him home nearly every evening, he volunteered for additional shifts. Frequently he was gone from 3 in the morning until late at night and had very little time for his wife or daughter. He did not attend any counseling sessions, and even after being ordered to do so, he declined and refused to pay any child support for the benefit of Shawna. He defied the court's order by removing Shawna from the custody of his stepmother and taking her and Karin to his home in Iowa, knowing full well that Karin had resumed drinking and was a chronic alcoholic incapable of caring for the child.

In response to the court's concern for the daily care of the child, his only proposal was that Shawna now be placed with his natural mother in the state of Missouri. This would be at least the sixth foster home into which Shawna had been placed. The carelessly indifferent attitude of Dennis is strikingly similar to that of the father in the recent case of *In re Interest*

*of O'Donnell,* 207 Neb. 367, 299 N.W.2d 428 (1980). In that case, the father's attitude was summarized in his own words: "'See, I was brought up an old fashioned person. I go to work, I take care of the finances and she stays home and takes care of the house and kids. It's as easy as that.'" *Id.* at 371, 299 N.W.2d at 431. Dennis was at all times familiar with Karin's loneliness, her alcoholism, and her desperate need for companionship and support. He offered no support. He did not pay child support to help care for Shawna; generally, he ignored her. He now suggests that he is not at fault, that the fault lies with his former wife Karin. However, his solution to the problem does not even include establishing a home in which the child could live with her natural father. He proposes instead that she be placed in one more situation, the likes of which so far have been disastrous to her physical and mental well-being.

Dr. Agnes Gomes, a Grand Island physician, testified at the final hearing. The doctor testified that after Shawna was taken from Dennis' stepmother she showed signs of severe mental withdrawal. Shawna's physical deterioration manifested itself first by affecting Shawna's eating habits. She began to overeat and gain weight, then lost weight in spite of her huge appetite. Later, she would withdraw into a corner, bang her head against the wall, and pull large patches of hair from her head. Dr. Gomes testified that Shawna had been diagnosed as having childhood schizophrenia. Dr. Gomes' recommendation was "that Shawna should be placed permanently in her only home — so, she would not have this — right now, the thing that would bring Shawna more harm than any good — she has been moved around, and around, and around, she can not trust anybody anymore, because the minute she starts trusting somebody, she is moved around again. I feel that all this should be ended, I feel that Shawna should be placed permanently and for good, so she does not have to be moved ever again."

As we said in *State v. Jenkins*, 198 Neb. 311, 317, 252 N.W.2d 280, 284 (1977): "In this case, while there may be no direct affirmative evidence of child abuse, there is ample evidence of neglect and a lack of proper parental care directly and adversely injurious to the health, safety, and well-being of the child. Parental rights may be forfeited by substantial, continuous, and repeated neglect of a child and a failure to discharge the duties of parental care and protection. In such a case, the best interests of the child become paramount."

In determining that Dennis Kimsey's parental rights should be terminated, the county court considered that Karin Kimsey was still a chronic alcoholic, that Dennis was still in no position to care for the child by himself, that the child was in a critical physical and emotional state, and that Dennis had not had physical custody of Shawna since November 4, 1977. The court also considered the fact that two prior placements with Dennis had failed and that yet another temporary placement was contrary to the express recommendation of Shawna's physician.

"Neither are we convinced by the argument that the father of the children should not be blamed for the mother's failure as a housekeeper and mother. Both parents have the duties as described in Neb. Rev. Stat. §§ 43-201 et seq. (Reissue 1978), as well as those inherent in the parent-child relationship. A father cannot delegate those duties to the mother of his children and expect to be held harmless if she neglects the children." *In re Interest of O'Donnell, supra* at 372, 299 N.W.2d at 431.

In the 2-year period in which Shawna was in the physical custody of others, Dennis, although ordered by the court to do so, sadly neglected to attempt to correct the situation. He was indifferent toward the child and felt he could limit his obligation to care for her by continuing to work away from home and ignore the rehabilitation efforts of Karin and the well-being of

Shawna. Clearly, the county court was right in its determination to terminate Dennis' parental rights.

The judgment of the District Court is reversed and the judgment of the county court is reinstated.

REVERSED WITH DIRECTIONS.