IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

LOWITZ V. COLSON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

LISA LOWITZ, APPELLANT,

V.

DANE COLSON, APPELLEE.

Filed December 20, 2016.    No. A-16-256.

Appeal from the District Court for Saunders County: MARY C. GILBRIDE, Judge. Affirmed.

Stephanie R. Hupp, of McHenry, Haszard, Roth, Hupp, Burkholder & Blomenberg, P.C., L.L.O., for appellant.

No appearance for appellee.

MOORE, Chief Judge, and RIEDMANN and BISHOP, Judges.

MOORE, Chief Judge.

## INTRODUCTION

Lisa Lowitz appeals from an order entered by the district court for Saunders County dissolving her marriage to Dane Colson. On appeal, Lisa asserts that the court erred in denying her request to remove Lisa and Dane's minor child from Nebraska to Colorado and determining property equalization. Finding no abuse of discretion by the trial court, we affirm.

## BACKGROUND

Lisa and Dane were married on June 14, 2008, in Ogallala, Nebraska. At the time of their marriage, the couple resided in Castle Rock, Colorado. The couple lived in Castle Rock for approximately 2 years and then moved to Ashland, Nebraska, so that Dane could accept a teaching and basketball coaching position with Louisville Public Schools. The couple has one child, Evan, who was born in August 2010.

The parties separated around August 2014 and in October, Lisa filed a complaint for dissolution. On September 28, 2015, the first day of trial, Lisa filed an amended complaint, with the addition of a request to remove Evan to Colorado. Lisa alleged that she had been offered employment in Colorado in her field of expertise which would further her career. Lisa also alleged that removal of Evan to Colorado would be in his best interest.

Trial was held on September 28 and December 8, 2015. As relevant to the issues on appeal, evidence was adduced regarding Lisa's request to move Evan to Colorado and the parties' property and debts.

At the time of trial, Lisa continued to live in Ashland and Dane lived in Waverly. In March 2015, Dane voluntarily resigned from Louisville Public Schools due to an investigation into an inappropriate relationship with a student. The incident did not lead to a criminal investigation or criminal charges. Dane remained unemployed for approximately six months following his resignation but was employed at the time of trial with the University of Nebraska Foundation. Dane's annual salary with the Foundation is $41,000 plus bonuses.

Lisa has been the primary caregiver for Evan since his birth. Dane's visitation during separation consisted primarily of a couple hours on Wednesday nights and 6 to 7 hours on Sundays, with additional time during the summer. Lisa claimed that Dane turned down opportunities for additional visitation with Evan.

Lisa is employed as a licensed massage therapist. She worked as a massage therapist in Castle Rock before moving to Nebraska to follow Dane's employment.

In support of Lisa's request to move Evan to Colorado, she asserts that her career would be enhanced by such a move. Lisa claims to have made substantially higher income while in Castle Rock than she was able to earn as a massage therapist in Ashland. According to a 2008 paystub from Lisa's employment in Castle Rock, she earned $14,040.37 in total gross pay through July 31. At this rate, Lisa could have earned $24,069 in total for the year. According to Lisa's 2014 W-2 form, she earned $16,150 working as a masseuse in Ashland. Through November 24, 2015, Lisa had earned $9,693.48 from the same employer. Lisa's work schedule in Ashland was arranged around periods when she had Dane or another individual available to care for Evan or during preschool hours.

In an effort to hold better employment, Lisa accepted a position with Ashland Chiropractic as a masseuse a couple months prior to the December 2015 hearing. Lisa is currently working fewer hours with this employer than with her previous Ashland employer. Lisa did not offer specific evidence of her compensation at this employment, but estimated that she was currently earning less than $1,000 a month there. Lisa did not seek employment elsewhere prior to accepting the Ashland Chiropractic position. The following exchange occurred between Dane's attorney and Lisa:

> [Dane's Attorney:] Did you ever consider that maybe moving to a larger city might help increase your financial stability with regard to your job?

> [Lisa:] I wouldn't have considered that because I wouldn't have felt that was the best decision for Evan.

> [Dane's Attorney:] Okay. But do you believe that it's in Evan's best interest that he have both parents involved in his life?

[Lisa:] Yes.

[Dane's Attorney:] Okay. So what's the reason that you're requesting to move?

[Lisa:] There's lots of reasons that I'm requesting to move, but the number one is that I can have job security to support a more financial supportive position for my son and I and our future.

Lisa received an employment offer on April 9, 2015 from a day spa in Castle Rock while preparing her removal request. This offer did not include a stated salary; rather, salary would be based off of commission and gratuities. Prior to the second day of trial in December 2015, Lisa had secured employment at Elements Massage in Littleton, Colorado (a suburb of Denver). According to a letter from the owner of Elements, Lisa was officially employed by Elements on November 5, 2015. The letter provided that a masseuse with Lisa's experience and expertise is in high demand in Denver; clients are already requesting appointments with Lisa weeks in advance; and massage therapists earn $37,000-$40,000 annually at Elements, not including tips, special event pay, or bonuses. Lisa has been employed "as her schedule allows" and it was agreed that she would work a "full workweek of five shifts." Lisa confirmed that her salary at Elements is commission based, and according to Lisa, the salary noted in the letter is "possible, based on an educated estimate," not a guaranteed amount. Lisa received one paycheck for limited work in November 2015 shortly following the start of employment with Elements. The amount was $70, covering a 2-week pay period.

Lisa testified that she expected to earn over 50 percent more income in Colorado than she had in Nebraska if she were permitted to relocate with Evan. Lisa had located potential apartment complexes near Elements, along with a good school for Evan, but she does not have a lease in place yet. Lisa also presented evidence that a majority of her family resides in Colorado and both she and Dane have family in western Nebraska. Dane also has a sister residing in Denver.

Lisa served discovery on Dane on March 24, 2015, but as of June 9, 2015, Dane had not responded and a motion to compel was filed. The record does not contain a disposition of the motion or inform us whether discovery answers were provided by Dane following the motion to compel. Lisa filed her signed property statement on September 8, 2015. Dane filed an unsworn property statement on September 25, 2015, three days before the trial began. Neither property statement identified any bank accounts belonging to Dane. Both property statements were admitted into evidence at trial and attached to the court's decree as exhibits.

Lisa testified that Dane had separate checking and savings accounts during the marriage. According to Lisa, the parties maintained separate bank accounts throughout their relationship, with the exception that Dane was on her checking account. Dane purchased a 2014 car after the parties separated. Dane testified he made a down payment on the vehicle of approximately $5,000 with funds from his bank account. Lisa's attorney then asked Dane if this was a bank account that had money in it from the period of time that they were married to which Dane responded "[f]rom long before that, but yes." Lisa's attorney then asked whether Dane had any other accounts or assets that he didn't disclose during discovery and Dane responded "[n]ot that I'm aware of." No questions were asked of Dane about whether his bank account or accounts were still in existence or the amount of any balance.

Lisa's property statement listed checking and savings accounts totaling $12,423.24 in her possession, and she asked that such funds be awarded exclusively to her as nonmarital property. Dane also listed these accounts on his property statement as belonging to Lisa; however, Dane valued these accounts at half the amount designated in Lisa's property statement. Dane requested that these funds be split equally between the parties, based on his opinion that such accounts were marital property. No bank accounts belonging to Dane were identified in either Lisa or Dane's property statements.

On February 10, 2016, the court entered a decree of dissolution. The parties were granted joint legal custody of Evan and Lisa was awarded full physical custody. Dane was granted visitation every other week from Wednesday at 6:00 p.m. until Sunday at 5:00 p.m. and every other Thursday from 5:00 p.m. until 8:00 p.m. on weeks without weekend visitation.

The court denied Lisa's application for removal of Evan on the basis that she failed to sustain her burden of proof. In support of its holding, the court made the following statement:

> The mother demonstrated only that she seeks to move to Denver to continue working in her massage therapy profession. The evidence does show that there is some potential for her to earn more income in Colorado, but that potential is not quantified. There is no demonstration that the child's housing or schooling conditions would be improved by the move. The move would impair the relationship between the child and his father as well as both sets of grandparents who have residences around the Ashland, Nebraska area.

Dane was ordered to pay $629 in monthly child support. The court divided the property contained within the property statements between the parties, awarding property valued at $17,613.25 to Lisa (of which $12,423.24 was her bank accounts) and property valued at $3,300 to Dane. Lisa was ordered to pay a $7,156.22 equalization judgment to Dane within 90 days of entry of the decree.

Lisa subsequently perfected this appeal.

ASSIGNMENTS OF ERROR

Lisa assigns, restated, that the district court erred in (1) denying her application to remove Evan from the jurisdiction and (2) ordering her to pay $7,156.22 for equalization of the marital estate.

STANDARD OF REVIEW

Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015). Similarly, in actions for the dissolution of marriage, the division of property is a matter entrusted to the discretion of the trial judge, whose decision will be reviewed de novo on the record and will be affirmed in the absence of an abuse of discretion. *Despain v. Despain*, 290 Neb. 32, 858 N.W.2d 566 (2015).

In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue.

However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Anderson v. Anderson*, 290 Neb. 530, 861 N.W.2d 113 (2015).

An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Schrag v. Spear, supra.* A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Id.*

## ANALYSIS

### REMOVAL FROM STATE

Lisa argues that the district court erred in denying her application to remove Evan from the jurisdiction, finding that she lacked a legitimate reason to move and that the move was not in Evan's best interests.

In order to prevail on a motion to remove a minor child to another jurisdiction, the custodial parent must first satisfy the court that he or she has a legitimate reason for leaving the state. *Schrag v. Spear, supra.* After clearing that threshold, the custodial parent must also demonstrate that it is in the child's best interests to continue living with him or her in the new location. *Id.* A trial court is not required to consider the second prong of the removal analysis if the moving party has not shown a legitimate reason for the move. See *Farnsworth v. Farnsworth*, 257 Neb. 242, 250, 597 N.W.2d 592, 598 (1999).

Significant career enhancement for a custodial parent is a legitimate reason for removal. *Schrag v. Spear, supra.* Job-related changes are legitimate reasons for moving where there is a reasonable expectation of improvement in the career or occupation of the custodial parent and the custodial parent's new job included increased potential for salary advancement. *Id.* See, also, *Jack v. Clinton*, 259 Neb. 198, 609 N.W.2d 328 (2000).

The district court concluded that Lisa failed to satisfy her burden of demonstrating a legitimate reason for leaving the state and that the move will be in Evan's best interest. With regard to a legitimate reason, the court found that Lisa "demonstrated only that she seeks to move to Denver to continue working in her massage therapy profession." The court noted that the evidence showed some potential for Lisa to earn more in Colorado, but that potential was "not quantified."

Child removal determinations are matters initially entrusted to the discretion of the trial judge, and the trial judge's determination is to be given deference. *Steffy* v. *Steffy*, 287 Neb. 529, 843 N.W.2d 655 (2014). Following our de novo review, we find no abuse of discretion by the district court in concluding that Lisa failed to show a legitimate reason to remove Evan from Nebraska to Colorado.

The employment letter from Elements in Colorado indicated that Lisa could potentially earn between $37,000 and $40,000 annually; however, such earnings are commission based and we agree with the district court that such earnings are essentially speculative. And, a paystub from Elements offered by Lisa showed earnings of only $70 during a 2-week period. Lisa also believed that her work hours at Elements would allow her to work during the day, thus being available to

Evan during the evening and weekends. However, the employment letter from Elements did not specify these hours, only indicating that the estimate of earnings was based upon a full workweek of five shifts.

Lisa's testimony indicates that minimal efforts were made to obtain better employment in Ashland or the surrounding area. Lisa took a position with Ashland Chiropractic a couple months prior to the December 2015 hearing, but did not offer any specific evidence regarding income with this employer. Lisa did not consider employment opportunities in bigger cities in close proximity to Ashland because she felt it would oppose Evan's best interests. Yet Lisa chose to pursue employment in Littleton, a suburb of Denver, located within a large metropolitan area. Lisa's failure to adduce sufficient evidence to show the move to Colorado was necessary to secure definitive career enhancement supports the district court's finding that Lisa failed to prove a legitimate reason for removal.

Lisa cites to this court's opinion in *Hiller v. Hiller*, 23 Neb. App. 768, 876 N.W.2d 685 (2016) in support of her argument. In *Hiller*, this court affirmed a decision granting the mother removal of a child from Nebraska to Virginia. We found that the trial court did not err in determining that the mother demonstrated legitimate reasons to relocate based on a new position and potential for career advancement along with a desire to obtain and maintain a professional work environment. The record showed the new position in Virginia was a lateral move, but would come with increased salary and greater likelihood of advancement than the mother's Nebraska position. Evidence also demonstrated that the father's actions adversely affected the mother's ability to perform her job in Nebraska. Further, the nature of the mother's employment meant limited opportunities for advancement in Nebraska. *Hiller*, 23 Neb. App. at 779-81, 784-85. We find *Hiller* to be distinguishable. Lisa's evidence about career enhancement in Colorado was speculative and no evidence was presented that career enhancement opportunities were not available in Nebraska outside of Ashland. And, in *Hiller*, the trial court found a legitimate reason for the requested move which we determined on appeal was not an abuse of discretion. Here, the district court found that a legitimate reason to move was not proven, and Lisa has failed to show that the trial court's ruling was clearly untenable requiring reversal.

We conclude that the district court did not abuse its discretion in finding that Lisa was unable to provide a legitimate reason for leaving the state. Since the first hurdle of removal was not overcome, we need not address the best interest prong of the analysis. See *Schrag v. Spear, supra* (ending relocation analysis after finding that custodial parent did not have a legitimate reason for relocating).

Lisa's first assignment of error is without merit.

PROPERTY EQUALIZATION PAYMENT

Lisa asserts that the district court erred by ordering her to pay a property equalization payment of $7,156.22.

Under Neb. Rev. Stat. § 42-365 (Reissue 2008), the equitable division of property is a three-step process. The first step is to classify the parties' property as marital or nonmarital, setting aside the nonmarital property to the party who brought that property to the marriage. The second step is to value the marital assets and marital liabilities of the parties. The third step is to calculate

and divide the net marital estate between the parties in accordance with the principles contained in § 42-365. *Despain v. Despain*, 290 Neb. 32, 858 N.W.2d 566 (2015).

Neb. Rev. Stat. § 42-365 authorizes a trial court to equitably distribute the marital estate according to what is fair and reasonable under the circumstances. *Bock v. Dalbey*, 283 Neb. 994, 815 N.W.2d 530 (2012). The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case. *Despain v. Despain, supra*.

Lisa argues that Dane failed to disclose or list any bank accounts in his possession on his property statement, despite having testified that he used his bank account toward the purchase of a car following separation. Dane testified that this bank account contained funds during the marriage, and was in existence before the marriage. Dane maintained separate checking and savings accounts during the marriage. However, no inquiry was made by either party during trial regarding the existence and value of any accounts in Dane's possession. In addition, Lisa did not include bank accounts in Dane's possession on her property statement. Nevertheless, Lisa asserts that because Dane failed to disclose his bank accounts, it is inequitable to include her accounts in the division of property.

Lisa argues further that, even if this court includes Lisa's bank accounts in its calculation, it was unjust and inequitable to award Dane one-half of the marital estate. Lisa reiterates that she disrupted her own career in Colorado to move to Ashland in support of Dane's employment, which was lost due to his personal misconduct. Dane remained unemployed for approximately 6 months during the pendency of the divorce. Lisa claims to have reduced her hours to allow her the ability to care for Evan full time. Under these circumstances, Lisa argues it was inequitable under Neb. Rev. Stat. § 42-365 to include all of her bank accounts in the property division which in turn required her to make an equalization payment to Dane.

Lisa requests that this court modify the property division such that each party is awarded his or her own bank accounts. Lisa argues this is especially appropriate since both parties had separate bank accounts throughout the marriage. Alternatively, Lisa suggests that Dane should be awarded one-third of the estate, reducing her equalization payment to $3,601.37. See *Gress v. Gress*, 271 Neb. 122, 123, 710 N.W.2d 318, 322 (2006) (although division of property is not subject to a precise mathematical formula, the general rule is to award a spouse one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case).

Upon our review, we find that the district court did not abuse its discretion in ordering an equalization payment of $7,156.22 based on the record before it. The court utilized the information contained on the parties' property statements. No evidence was adduced by either party to rebut the information contained therein on either trial date, with the exception of a couple of minor items identified by Lisa that are not at issue in this appeal. The property division selected by the court and corresponding equalization payment was fair and reasonable under the circumstances.

The court's decision to award Dane one-half of the marital estate, and a corresponding equalization judgment, was not an abuse of discretion.

Lisa's second assignment of error is without merit.

## CONCLUSION

Upon our de novo review, we find that the district court did not abuse its discretion in its denial of Lisa's removal request or in its property equalization judgment. Accordingly, we affirm.

AFFIRMED.